[Civ. No. 4185. Fifth Dist. Nov. 26, 1980.]

JESSIE SORENSEN et al., Plaintiffs,
Cross-defendants and Respondents, v.
WILBURN EVERETT ALLRED, Defendant, Cross-complainant and
Appellant.

**COUNSEL**

McCormick, Barstow, Sheppard, Coyle & Wayte, Wade M. Hansard and Lowell T. Carruth for Defendant, Cross-complainant and Appellant.

Hoberg, Finger, Brown, Carlson, Cox & Molligan and Richard H. Carlson for Plaintiffs, Cross-defendants and Respondents.

OPINION

THOMPSON, J.*—Appellant-defendant appeals a judgment rendered against him after a jury trial in an action arising out of an automobile accident. Both wilful misconduct on the part of defendant and contributory negligence on the part of plaintiff Jessie Sorensen were pled and the issues were tried in the light of the doctrine of comparative negligence adopted in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] (hereinafter *Li*). The jury by appropriate special interrogatories found that defendant was guilty of wilful misconduct and that his negligence was apportioned at 55 percent as against the negligence of plaintiff apportioned at 45 percent. The trial court, relying expressly on *Kindt* v. *Kauffman* (1976) 57 Cal.App.3d 845 [129 Cal.Rptr. 603], ruled that wilful misconduct on the part of defendant made the doctrine of comparative negligence inapplicable and entered judgment for the plaintiffs as to 100 percent of their damages. No issue is raised as to the amount of damages found as to all parties.

The case herein, unlike previous cases decided by appellate courts since *Li*, presents the basic issue—whether a finding of wilful misconduct operates to exclude the principle of comparative negligence—in a "true to life" posture, unclouded by any peripheral issues.

We briefly relate the facts. Plaintiff Jessie Sorensen, accompanied by her husband as a passenger, was travelling southbound on Chestnut Avenue at its intersection with Butler Avenue in the City of Fresno on the evening of August 1, 1974. Defendant was travelling northbound on Chestnut Avenue at the said intersection. The intersection is controlled by signal lights. As the defendant approached the intersection at a speed variously estimated at from 35 to 75 miles per hour (the posted speed limit was 40 miles per hour), plaintiff driver commenced a left turn at a speed variously estimated at from 10 to 20 miles an hour. There is no evidence with respect to whether plaintiff's turn signal was activated.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

In the ensuing collision plaintiff Jessie Sorensen was injured and her husband was killed. The jury awarded $35,000 in damages for Jessie Sorensen's injuries and $50,000 in damages for wrongful death to Mr. Sorensen's heirs. As we have noted the jury apportioned the negligence 45 percent to Jessie Sorensen and 55 percent to the defendant.

There are in effect two issues to be decided: namely, does a finding of wilful misconduct on the part of a defendant operate to remove the issue of contributory negligence on the part of a plaintiff, and secondly, was there sufficient evidence to support a finding of contributory negligence on the part of plaintiff?

With respect to the second issue, we find ample evidence to support a finding of contributory negligence on the part of plaintiff. Viewing as we must the evidence most favorable to support the verdict of the jury upon that point, the evidence supports a finding that Mrs. Sorensen made a left turn in front of the oncoming defendant's vehicle in violation of Vehicle Code section 21801.[1] Two eyewitnesses were unable to state categorically that the defendant was exceeding the speed limit as he entered the intersection. Both the plaintiffs and the defendant produced accident reconstruction experts whose testimony not uncharacteristically was in diametric opposition to each other. Plaintiffs' expert placed defendant's speed at 75 miles or more per hour; defendant's reconstruction expert, whose qualifications on the record were at least the equal of the plaintiffs', placed the closing speed at which the two vehicles collided at 50 miles per hour—or approximately 35 to 40 miles per hour for defendant, 10 to 15 miles per hour for plaintiff.

The evidence is without conflict that the defendant's blood alcohol level at the time of the accident was well above the legally accepted level to establish intoxication. On the other hand, the evidence that he left 36 feet of skid marks prior to impact indicates that he was not totally

---

[1]Vehicle Code section 21801 is as follows: "(a) The driver of a vehicle intending to turn to the left at any intersection...shall yield the right-of-way to all vehicles which have approached or are approaching from the opposite direction and which are so close as to constitute a hazard at any time during the turning movement and shall continue to yield the right-of-way to such approaching vehicles until such time as the left turn can be made with reasonable safety.

"(b) A driver having so yielded and having given a signal when and as required by this code may turn left and the drivers of all other vehicles approaching from the opposite direction shall yield the right-of-way."

incapable of operating his vehicle with some degree of prudence. He testified that his driving was not impaired by his alcohol consumption.

We find no difficulty in concluding that the jury's finding of substantial contributory negligence on the part of plaintiff Jessie Sorensen is well supported and that the placing of a 45 percent evaluation thereon is well within the "ball park."

■ The remaining issue is more difficult in its analysis. It is not disputed that the defendant was guilty of wilful misconduct but it is the contention of defendant-appellant that the trial court erred in ruling that such a finding by the jury renders inapplicable the rest of its finding that 45 percent of plaintiff's injuries were attributable to her own negligence. He contends plaintiffs' judgment should be diminished by that percentage.

As we noted earlier, the trial court's determination in this case was predicated entirely upon the case of *Kindt* v. *Kauffman, supra,* 57 Cal. App.3d 845. Despite the excellent scholarship in both the majority and dissenting opinions in that case, we do not believe that said case is dispositive here. The discussion in *Kindt* v. *Kauffman* upon this issue was entirely dicta. The Supreme Court, having had no opportunity in subsequent cases to meet the issue of the effect of wilful misconduct upon contributory negligence, nevertheless has disapproved of the holding of *Kindt* v. *Kauffman* that intoxication on the part of a plaintiff by operation of law bars a plaintiff from asserting a claim against a negligent defendant furnisher of alcohol in a commercial setting. In *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389 [143 Cal.Rptr. 13, 572 P.2d 1155], a case applying pre-*Li* law, the Supreme Court disapproved of *Kindt's* holding that a bartender owed no duty to a patron to forestall his intoxication and held that a patron's becoming intoxicated and injuring himself could not as a matter of law be found to be wilful misconduct (*id.,* at p. 401, fn. 8 and p. 404, fn. 10). In *Ewing, supra,* the Supreme Court did not discuss comparative negligence principles enunciated in *Li,* leaving the question of the relationship between wilful misconduct and ordinary negligence where it found that question, undecided.

In *Li* v. *Yellow Cab, supra,* the Supreme Court recognized that a number of issues including the one confronting us were left open with the stated intent that these unresolved issues should be decided on a case by case basis. The *Li* court stated at pages 825-826: "Finally there

is the problem of the treatment of wilful misconduct under a system of comparative negligence. In jurisdictions following the 'all-or-nothing' rule, contributory negligence is no defense to an action based upon a claim of wilful misconduct (see Rest.2d Torts, § 503; Prosser, Torts, *supra*, § 65, p. 426), and this is the present rule in California. (*Williams v. Carr* (1968) 68 Cal.2d 579, 583 . . . .) As Dean Prosser has observed, '[this] is in reality a rule of comparative fault which is being applied, and the court is refusing to set up the lesser fault against the greater.' (Prosser, Torts, *supra*, § 65, p. 426.) The thought is that the difference between wilful and wanton misconduct and ordinary negligence is one of kind rather than degree in that the former involves conduct of an entirely different order, and *under this conception it might well be urged that comparative negligence concepts should have no application when one of the parties has been guilty of wilful and wanton misconduct. It has been persuasively argued, however, that the loss of deterrent effect that would occur upon application of comparative fault concepts to wilful and wanton misconduct as well as ordinary negligence would be slight, and that a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional.* (Schwartz, *supra*, § 5.3, p. 108.) The law of punitive damages remains a separate consideration." (13 Cal.3d at pp. 825-826, italics added, fns. omitted.)

The most comprehensive historical and analytical treatise on the subject of comparative negligence is that of Professor Schwartz, Comparative Negligence (1974), with a special supplement relating to California's experience in the adoption of the doctrine in *Li v. Yellow Cab Co., supra*, which writing is liberally cited by our Supreme Court. In his special California supplement, annexed to Comparative Negligence, *supra*, at pages 5-6, Professor Schwartz makes the following comments: "Under California law, prior to the Nga Li case, plaintiff's contributory negligence was ignored if he showed that the defendant had acted willfully and wantonly in injuring him. California courts used the words 'willful and wanton' as a synonym for recklessness—conduct of extremely high culpability but not necessarily intentional. As the Court noted in the Nga Li case, the question arises under comparative negligence whether plaintiff's contributory negligence will continue to be ignored when the defendant acted in a willful and wanton manner.

"The Court noted the late Dean Prosser's suggestion that the old rule should continue and contributory negligence should be no defense at all

because willful and wanton conduct is different in kind rather than in degree from ordinary negligence. On the other hand, the Court also observed that 'a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional.'

"It seems probable that the California Court will handle the matter of the reckless or willful and wanton defendant the same way it specifically said it would handle last clear chance: let the jury consider the facts and apportion damages.

"The argument that willful, wanton or reckless conduct is somehow different in kind (rather than degree) falls flat in actual practice because an objective standard is still being applied. The Restatement of Torts recognizes this in stating that:

"'It is enough that the [actor] knows or has reason to know of circumstances which would bring home to the realization of the ordinary reasonable man the highly dangerous character of his conduct.'" (Fns. omitted.)

Although our Supreme Court has not made a specific pronouncement upon the issue before us, we find a trend in its decisions which points toward an adoption of an apportionment of the fault doctrine, irrespective of the nature of the alleged operative negligence or other basis for liability in a particular case. This is the unmistakeable tenor of the case of *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], wherein the court had no difficulty in harmonizing comparative negligence with strict liability. In support of its decision, the Supreme Court in *Daly* observed at pages 741-742: "We find additional significance in the provisions of the proposed Uniform Comparative Fault Act (Act), authored by Professor Wade, a recognized torts scholar, distinguished professor of law, and former dean, Vanderbilt University, current reporter of the Restatement Second of Torts, and chairman of the special committee on the Act of the National Conference of the Commissioners on Uniform States Laws (Conference). Our attention has been called to the action of the Conference in August 1977, wherein it approved adoption of the Act by a vote of 40 states to 8 (California voting favorably). The Act is the distillation of approximately five years of discussion, analysis, and contribution by a special committee and a review committee of the Conference. We quote portions of section 1 of the proposed Act: 'Section 1. [Effect of

Contributory Fault.] [¶] .... [¶] (b) "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, *or that subject a person to strict tort liability.*' [Italics added by *Daly* court.] While lacking any legislative sanction, *the Act, in our view, points in the direction of a responsible national trend. As such, section 1 is revealing in two notable respects*: in its clear definitional expression in subsection (b) that comparative principles are to be applied to cases of 'strict tort liability,' and *in its substitution of the broad generic term 'fault,'* in subsection (a), as including both negligence and strict liability." (Italics added.)

A similar conclusion is reached in the legislative study reported in 30 Hastings L.J. (1979) page 1464 et seq. Professor Fleming in a study entitled *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court* recommended that the Legislature include recklessness and wilful misconduct short of intentional injury among the kinds of fault capable of reducing, but no longer necessarily barring recovery, a conclusion which coincides with that announced in the Uniform Comparative Fault Act.

Equally expansive upon the doctrine that the "all-or-nothing" concept does not serve the interests of justice is the case of *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, at pages 607-608 [146 Cal.Rptr. 182, 578 P.2d 899]. The conclusion there is that: "In the instant case...the force of *Li's* rationale applies equally to the allocation of responsibility between two or more negligent defendants and requires a modification of this state's traditional all-or-nothing common law equitable indemnity doctrine. Again, we concur with Dean Prosser's observation in a related context that '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were...unintentionally responsible, to be shouldered onto one alone,...while the latter goes scot free.' (Prosser, Law of Torts, *supra*, § 50, p. 307.) From the crude all-or-nothing rule of traditional indemnity doctrine, and the similarly inflexible per capita division of the narrowly circumscribed contribution statute, we have progressed to the more refined stage of permitting the jury to apportion liability in accordance with the tortfeasors' comparative fault."

In logical progression, our Supreme Court in *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441], ex-

tended the comparative fault concept to require that liability between tortfeasors should be apportioned in a situation where one tortfeasor's liability is based upon negligence and the other tortfeasor's liability is based upon the strict product liability doctrine.

We find little profit in making an exhaustive analysis of out-of-state interpretations of the comparative negligence doctrine. (See 78 A.L.R. 3d 339.) Based as it is in California solely upon judicial decisions, the statutes of other states and their interpretations shed little light upon our problem·and are sharply in conflict.

Surely, the choice of the trier of the fact in this case as to the apportionment of damages is much clearer than in the *Daly* context where strict liability is compared to contributory negligence. We are here not comparing apples and oranges as respondent suggests but rather two varieties of oranges (simply negligence versus gross negligence) or at worst oranges and lemons, since the underlying comparison is being made between two types of negligence which the jury found to be almost equal in causing the accident.

In summary, we conclude that no defensible reason exists for categorizing wilful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. The adoption of comparative negligence in *Li* rendered such a separate category unnecessary since contributory negligence on the part of a plaintiff was no longer a total bar to recovery for a tortious injury. We apply an old axiom, "when the need for a rule ceases the rule ceases."

Nor do we believe that there would be any deterrent effect in maintaining the distinction of wilful misconduct. We think it altogether apparent that people in general, and motorists in particular, do not act with any deliberative thought as to consequences which are not immediately apparent. Witness the disdain with which motorists in vast numbers disregard the use of seat belts intended for their protection.

The important byproduct of the abolition of shades of negligence or other categorizations of fault would be the streamlining of the trial of cases. The submission to triers of fact, particularly juries, of issues of liability upon the simply stated question, "Whose fault was it, and if both are at fault, what are the degrees of fault of each" places the issues in a context more readily understood. The greater the elimination of such

"buzz" words as wilful misconduct, last clear chance, [assumption of the risk], etc.,[2] the more the focus will be upon the real issues as we have noted above. The elimination of wilful misconduct as a bar to recovery offers justice to both plaintiffs and defendants in situations where it now is all or nothing. Witness *Ewing* v. *Cloverleaf Bowl, supra,* 20 Cal.3d 389, where the plaintiff would be the beneficiary of the elimination of wilful misconduct as a total bar to recovery.

For the reasons discussed, we conclude that the doctrine of comparative negligence should apply where either party's conduct is of the type traditionally described as wilful and wanton. We believe that considerations of fairness and public policy dictate that this rule be given precisely the same type of "limited retroactivity" as in *Li* (13 Cal.3d at pp. 829-830). We also accord the benefit of our holding to appellant herein.

In the main action, the respondents' (plaintiffs') recovery should have been diminished in proportion to Mrs. Sorensen's negligence.[3] Thus, Mrs. Sorensen shall recover $19,250 in the personal injury action; in the wrongful death action respondents shall recover $27,500. We modify the judgment accordingly. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 533, pp. 4477-4478).

With respect to the cross-action, appellant (cross-complainant) was entitled to recover 45 percent of his property damage or $1,662.75. (The uncontradicted evidence established that appellant's property damage amounted to $3,695.) A separate judgment should have been entered in his favor on the cross-complaint because our Supreme Court's decision in *Jess* v. *Herrmann* (1979) 26 Cal.3d 131 [161 Cal. Rptr. 87, 604 P.2d 208], mandates entry of separate judgments rather than one net judgment where both parties are insured. It was stipulated at oral argument herein that both parties were insured.

---

[2] See *Li, supra,* 13 Cal.3d at page 829, where the court, recognizing this effect, states: "The doctrine of last clear chance is abolished, and the defense of assumption of risk is also abolished to the extent that it is merely a variant of the former doctrine of contributory negligence; both of these are to be subsumed under the general process of assessing liability in proportion to negligence."

[3] It was stipulated below that any percentage reduction caused by Mrs. Sorensen's negligence would also reduce the awards to the other plaintiffs in the death action. By this stipulation, the parties averted the need for a cross-complaint against Mrs. Sorensen for comparative indemnity.

The judgment in the main action is affirmed as modified. The judgment in the cross-action is reversed and the trial court is directed to enter judgment in favor of appellant cross-complainant in the amount of $1,662.75. Each party shall bear his own costs on appeal.

Hopper, Acting P. J., and Andreen, J., concurred.

A petition for a rehearing was denied December 16, 1980, and respondents' petition for a hearing by the Supreme Court was denied February 4, 1981. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.