[Civ. No. 47862. First Dist., Div. Two. Nov. 5, 1982.]

ALBERT L. ALLEN et al.,
Plaintiffs, Cross-defendants and Respondents, v.
HAROLD A. SUNDEAN et al.,
Defendants, Cross-complainants and Appellants;
RUTH M. MALLERY, Defendant, Cross-complainant and Respondent.

COUNSEL

Jeffrey P. Widman, Berliner, Cohen & Biagini, James G. Van Noy, Jr., and Van Noy & Panelli for Defendants, Cross-complainants and Appellants.

Alan J. Levin and Adams, Levin, Kehoe, Bosso, Sachs & Bates for Plaintiffs, Cross-defendants and Respondents.

Frederick H. Ebey and Grunsky, Pybrum, Skemp & Ebey for Defendant, Cross-complainant and Respondent.

OPINION

**GRODIN, P. J.**—This litigation arises out of property damage caused by a 1974 landslide in Santa Cruz. The trial court, sitting by stipulation without a

jury, found that Sundean, the original developer of the lots, was guilty of wilful misconduct in placing poor quality fill upon the hillside lots without proper compacting and engineering and of fraudulent concealment in failing to disclose to purchasers the nature and extent of the fill.

Though the development occurred some 20 years prior to the slide, the court rejected Sundean's statute of limitations defense, finding that the claimants, Mallery and Allen, had neither actual nor constructive notice of Sundean's wrongdoing prior to the slide. It also rejected Sundean's contention that Mallery, one of the property owners, contributed to the landslide by failing to take corrective action. And, while it found that Kram, also one of the property owners and a cross-defendant, had contributed to the landslide by the negligent manner in which he conducted excavations on his property, it declined to allocate any portion of the judgment against Kram, indicating doubt as to whether comparative fault principles apply in the context of wilful misconduct or intentional tort.

Sundean has appealed, contending (1) that there is insufficient evidence to support the trial court's finding that the lawsuits were timely filed; (2) that the trial court erred in failing to find Mallery's failure to take corrective action was a contributing cause of the landslide; and (3) that Sundean is entitled to a contribution from Kram to the extent Kram was at fault. Kram has also appealed, contending that there was insufficient evidence to support the trial court's finding that any act or omission on his part was a proximate cause of the landslide. We will conclude that there was sufficient evidence to support each of the trial court's disputed findings and that the court was correct in declining to allow Sundean partial indemnity from Kram for damages caused by Sundean's fraudulent concealment but that Sundean is entitled to partial indemnity from Kram for damages caused by Sundean's independent acts of wilful misconduct.

*Factual and Procedural Background*

In 1953, Harold A. Sundean arranged to have a large quantity of fill material deposited on steep, unimproved hillside property which he owned. The trial court found that the material was not compacted or "keyed" into the original soil and that it contained material such as wood objects, rocks, and concrete which made it of poor quality. The placement of the fill was not supervised by an engineer and no provisions were made for drainage.

In 1956, Sundean and another defendant, Palmer (who is not a party to this appeal), entered into a joint venture whereby Palmer built a single family residence on the filled lot owned by Sundean. In 1957, that lot was sold to Ruth Mallery and her husband, now deceased. The Mallerys were told that there was "some fill" on the lot but that the foundation of the residence was anchored into

original soil. The court found that Sundean and Palmer concealed from the Mallerys the facts regarding the nature and extent of the fill and the stability of the land even though they were under a duty to make these disclosures, that they did so with the intent to induce the Mallerys to purchase the property, and that the Mallerys would not have purchased the property if they had known the facts.

During 1960 and 1961, Sundean subdivided and developed the property immediately downhill from the Mallery property and this became known as the Sunny Slopes Court subdivision. Lot number five of the subdivision was contiguous to the Mallery lot and was a continuation of the downward slope on the same hill as that of the Mallery property. In 1967, Sundean sold number lot five to Anton Kram and his wife. Again, Sundean concealed from the buyer the facts regarding the nature and extent of the fill on the Mallery property and the court found that Kram would not have purchased it if disclosure had been made.

Kram was a licensed building contractor and purchased the lot for the purpose of constructing a residence for himself and his family. During the course of construction, Kram did some further excavation into the toe of the slope of the filled hillside. The court found that in doing so Kram failed to exercise the degree of care generally exercised by a general contractor under similar conditions.

In April 1972, Kram sold lot number five and the house to Albert Allen and his wife. While Kram failed to disclose the condition of the hillside to the Allens, the trial court found no fault on Kram's part in that respect since Kram was not aware of the condition himself.

The April 1, 1974, landslide resulted in damage to both the Allen and Mallery properties. Allen initiated the action below by filing suit on May 28, 1975, against Mallery, Kram and Sundean. Mallery cross-complained against Kram and Sundean for indemnity and comparative contribution, and later added Palmer as a cross-defendant. Sundean filed a cross-complaint for indemnity and comparative contribution against Mallery and Kram on December 17, 1975. After the trial court rejected Sundean's theories for imposing liability on Mallery, Sundean filed a second cross-complaint for indemnity and comparative contribution against Kram and Allen. Finally, Kram cross-complained against Sundean for indemnity. In short, everyone sued everyone else.

In addition to the facts already recited, the trial court found that neither Mallery nor Kram was aware of the nature and extent of the hillside fill material prior to the slide and that the loss which ultimately occurred could not have been avoided except by the measures which were taken after the slide. It allocated 80 percent of the fault to Sundean's action in placing uncompacted

and unengineered fill on the lots, 10 percent to the fraudulent concealment by Sundean at the time of the sale to Kram and the concealment by the joint venture at the time of the sale to Mallery, and 10 percent to the negligent excavation by Kram. Believing that partial indemnity was not appropriate, however, it ordered that the entire judgment in favor of Allen be paid by Sundean and the judgment in favor of Mallery by Sundean and Palmer. Palmer has not appealed.

## I.

### Statute of Limitations

■ Code of Civil Procedure section 338 establishes a three-year statute of limitations for fraud actions (subd. 4) and for actions for trespass upon or injury to real property (subd. 2). "In cases involving fraud or mistake the statute commences to run when the plaintiff discovers he has a cause of action or, through the use of reasonable diligence, should have discovered it." (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 559 [305 P.2d 20]; Code Civ. Proc., § 338, subd. 4.) ■ Similarly, a plaintiff's cause of action for property damage caused by latent construction defects accrues "from the point in time when plaintiffs became aware of defendant's negligence as a cause [of damage to the property], or could have become so aware through the exercise of reasonable diligence." (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 408 [163 Cal.Rptr. 711].) It is plaintiff's burden to establish "facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 [159 P.2d 958].) "[W]hether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide." (*Enfield* v. *Hunt* (1979) 91 Cal.App.3d 417, 419 [154 Cal.Rptr. 146].)

■ With these legal principles in mind, we turn to the record, viewing it, as we must, in a light most favorable to the judgment. Mr. and Mrs. Mallery purchased their residence from Sundean in March 1957. Ruth Mallery was 74 years old at the time of trial. Her husband died in 1967. Since marrying her husband in 1932, she had not been employed outside of the home. Neither she nor Mr. Mallery had any education, training, or experience, in the field of construction or in soil mechanics.

Shortly after they purchased the house, Mrs. Mallery was advised by her friend, Ida Edwards, that the soil contained eucalyptus logs. She asked Sundean about that and he admitted there were logs but said he did not think they were under her lot. During the first two years of occupancy, the Mallerys noticed minor problems of soil settlement each rainy season, along the hillside foundation and in the garage: the garage floor had a crack, and the living room floor

seemed a bit uneven but there was no cracking of plaster or sticking of doors. In 1960 or 1961, the Mallerys hired a contractor who placed "shims" between the top of the foundation and the floor to level the foundation, but the contractor testified that all of the foundations other than the rear foundation on the south side were in good condition. He noted no abnormalities with the backyard and he was unaware that there was fill under the house.

There was no further evidence of settling over the next six or seven years. In 1970, however, the rear patio that was tied in with "rebar" to the south foundation of the house started pulling away and there was a small slide involving a few wheelbarrows full of dirt on adjoining property owned by Kram. Mallery attributed the patio problem to decaying eucalyptus logs and she had the patio broken up and hauled away. She believed the slide on Kram's property was caused by an inadequate retaining wall.

In 1972, Mrs. Mallery noticed some movement of her backyard lawn. Kram, a contractor, went under the Mallery house and observed that the ground looked solid. Noticing a separation of approximately one inch between the top of the rear foundation and the wooden exterior frame, he put in some additional piers to shore up the house. The record contains conflicting evidence as to whether Kram advised Mallery at that time to seek the advice of an engineer.[1]

Mallery experienced no further problems until the landslide. Suit was filed in the summer of 1975. The trial court found: "Prior to the slide of April 1, 1974, in fact prior to 1972, Mallery had experienced some problems caused by intermittent settling of soil. However, she justifiably relied on information from other individuals as to the cause of these problems and did not comprehend the true nature and extent of the conditions that eventually culminated in the landslide of April 1, 1974. Mallery at all times exercised reasonable care for her own protection and that of others." We conclude that substantial evidence supports the finding.

The other lot at issue was sold to Kram in 1967, and he, after constructing a house on the lot, sold it to respondent Allen in 1972. Kram testified that when he purchased his lot from Sundean, he could barely see up the hill to the rear because of shrubbery. He had no indication that the hillside was filled. Except for the small slide which occurred in 1970, he experienced no problems. The trial court found that "at all times prior to April 1, 1974, Kram was unaware of the nature and extent of the hillside fill material." We conclude that this finding, also, is amply supported by the evidence. There was no evidence that Allen, the subsequent purchaser, knew or should have known of the existence of the fill.

---

[1]Kram so testified at the time of trial but that testimony was contrary to his earlier deposition and to Mallery's testimony.

## II.

### *Alleged Fault on the Part of Mallery*

■ Sundean contends that Mallery had such notice of the dangerous condition of her land as to require her to take corrective action and that the failure to take such action was a negligent act and contributing cause of the landslide. The trial court's finding that she "at all times exercised reasonable care for her own protection and that of others" is, however, supported by the evidence, as we have observed. In addition, and in response to a claim by Allen that the condition of Mallery's property was a nuisance, the trial court found that the only action that could have prevented the landslide was a reconstruction of the hill and that would have involved taking Mallery's house off its foundation. Sundean does not appear to dispute this finding, which was based upon expert testimony.

## III.

### *Contribution by Kram*

■ The trial court found that Kram, a licensed contractor, negligently made an excavation in the toe of the hillside when he constructed his house in 1967 and that such negligence contributed as a concurring cause to the ensuing damage. Kram concedes that these findings are supported by substantial evidence. He points, however, to another finding by the trial court that the landslide became "inevitable and irreversible" when, in 1953, Sundean placed uncompacted fill on the hillside; and he contends that this latter finding necessarily implied that the landslide would have occurred anyway. On that basis, and citing *Thomsen* v. *Rexall Drug & Chemical Co.* (1965) 235 Cal.App.2d 775, 783 [45 Cal.Rptr. 642], he argues that as a matter of law his negligence could not be said to be a proximate cause of the ensuing damage.

■ While the trial court's findings are superficially inconsistent, we are obliged to reconcile them if possible, rather than to presume prejudicial error. (*Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289].) ■ The fact that Sundean's preparation of Mallery's building lot may have made the 1974 landslide inevitable does not preclude the possibility that Kram's cutting into the foot of the hill may have accelerated and/or magnified the catastrophe. And that, apparently, is what the trial court concluded.

■ A more substantial issue is presented by Sundean's contention that he is entitled to partial indemnity from Kram, based on the trial court's finding that Kram's negligence was partly responsible for the damage to Allen and Mallery. The learned trial judge was of the opinion that "a party guilty of fraud and/or

wilful misconduct is not entitled to contribution from a merely negligent co-tortfeasor." Recognizing the lack of explicit guidance from the appellate courts on the question, however, he made precise findings designed to permit adjustment of the award in the event his conclusions were deemed erroneous.

The Supreme Court in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], recognized "the problem of the treatment of willful misconduct under a system of comparative negligence," and took note of the competing arguments in that respect: on one hand, the argument "that the difference between willful and wanton misconduct and ordinary negligence is one of kind rather than degree," and, on the other, "that the loss of deterrent effect that would occur upon application of comparative fault concepts to willful and wanton misconduct as well as ordinary negligence would be slight . . . ." (*Id.,* at pp. 825-826.) The Supreme Court has not yet had occasion to address that problem further; but it has held that comparative fault principles should be applied to apportion responsibility between a strictly liable defendant and a negligent plaintiff in a product action (*Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]), and that such principles should be utilized as the basis for apportioning liability between two tortfeasors, one whose liability rests upon strict liability doctrine and the other whose liability derives, at least in part, from negligence theory (*Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441]).

Several appellate decisions, rendered since the judgment in this action, have considered the applicability of comparative fault principles to wilful misconduct and have concluded that such principles do apply. In *Sorenson* v. *Allred* (1980) 112 Cal.App.3d 717 [169 Cal.Rptr. 441, 10 A.L.R.4th 937], the question was whether a finding of wilful misconduct on the part of a defendant, based upon his intoxication while driving, operated to remove the issue of contributory negligence on the part of the plaintiff driver. In a scholarly and well-reasoned opinion, the court found in the decisions of the Supreme Court "a trend . . . which points toward an adoption of an apportionment of the fault doctrine, irrespective of the nature of the alleged operative negligence or other basis for liability in a particular case." (*Id.,* at p. 723.) Noting that in California law the term "wilful misconduct" is a synonym for reckless conduct,[2] the court concluded "that no defensible reason exists for categorizing wilful and wanton misconduct as a different kind of negligence not suitable for comparison with

---

[2]In *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804, the court quoted with apparent approval a BAJI instruction defining "wilful or wanton misconduct" as ". . . 'intentional wrongful conduct, done whether with knowledge, express or implied, that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results.' " (*Id.,* at p. 825, fn. 19.)

any other kind of negligence." (*Id.*, at p. 725.) *Southern Pac. Transportation Co.* v. *State of California* (1981) 115 Cal.App.3d 116 [171 Cal.Rptr. 187], and *Zavala* v. *Regents of University of California* (1981) 125 Cal.App.3d 646 [178 Cal.Rptr. 185], are in accord (see also, *Plyler* v. *Wheaton Van Lines* (9th Cir. 1981) 640 F.2d 1091 [applying California law to the same effect]), as are the views of respected scholars (Schwartz, Comparative Negligence, Special California Supplement, pp. 5-6; Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court* (1979) 30 Hastings L.J. 1464, 1477-1479).

Applicability of comparative fault principles to the intentional tort of fraudulent concealment is, however, a different matter. We note that the Supreme Court in *Li*,[3] and again in *American Motorcycle*,[4] used language which appears to exclude intentional torts from the comparative fault system. Nor has there been support for an extension of comparative fault principles to intentional torts, as there was to wilful misconduct or to strict liability, in other states,[5] among the commentators generally,[6] or in the Uniform Comparative Fault Act.[7] Finally, Code of Civil Procedure section 875, subdivision (d), still provides: "There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person."[8] Thus, while there may be sound policy arguments for extending comparative fault principles to intentional tortfeasors (see Note, *Comparative Fault and Intentional Torts* (1978) 12

---

[3]In *Li*, the Supreme Court took note of Professor Schwartz's view that "a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional." (13 Cal.3d at pp. 825-826.)

[4]In *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 607-608 [146 Cal.Rptr. 182, 578 P.2d 899], the court concurred in Dean Prosser's observations that " '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were . . . *unintentionally* responsible, to be shouldered onto one alone . . . while the latter goes scot free.' " (Italics added.)

[5](See, Annot., Comment Note—Contribution or Indemnity Between Joint Tortfeasors on Basis of Relative Fault (1973) 53 A.L.R.3d 184-226; Annot., Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like (1981) 10 A.L.R.4th 946-957.)

[6](See Schwartz, Comparative Negligence (1981 supp.) §§ 5.2, 5.3, pp. 44-47; Woods, Comparative Fault (1981 supp.) § 7.1, p. 40; Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court, supra*, 30 Hastings L.J. at pp. 1478, 1480.)

[7](Uniform Comparative Fault Act, § 1(b).)

[8]We recognize that in *American Motorcycle*, the Supreme Court held that a defendant may claim partial indemnity from a concurrent tortfeasor for his apportioned share of fault, notwithstanding the direction of Code of Civil Procedure sections 875 and 876 that contribution be allocated "pro rata" (20 Cal.3d at pp. 599-605), and that in *Safeway Stores* it held that "the existing contribution statutes do not in themselves necessarily prohibit apportionment of liability among multiple tortfeasors on a comparative fault basis" (21 Cal.3d at p. 328). Thus, Code of Civil Procedure section 875, subdivision (d), may prove no bar to partial indemnification of an intentional tortfeasor. The Supreme Court has not yet had occasion, however, to address this question.

Loyola L.A. L.Rev. 179), there is as yet no authority to support such an extension.[9]

We therefore conclude that the trial court was correct in denying Sundean partial indemnity from Kram for damages attributable to its fraudulent concealment but that it erred[10] in denying partial indemnity for damages attributable to Sundean's wilful misconduct. The judgment is accordingly modified to provide that Sundean is entitled to partial indemnity from Kram in the amount of 8 percent of the amounts awarded for compensatory damages.

As modified, the judgment is affirmed. Sundean will pay 90 percent of the costs on appeal, the balance to be paid by Kram.

Rouse, J., and Miller, J., concurred.

A petition for rehearing was denied December 3, 1982.

---

[9]We note also that in *Carroll* v. *Gava* (1979) 98 Cal.App.3d 892 [159 Cal.Rptr. 778], the court held that comparative fault principles did not apply to an action by purchasers of a mobile home park site based upon negligent misrepresentation by the sellers as to the applicable zoning. The court reasoned that the comparative fault concept "has no place in the context of ordinary transactions. . . . Business ethics justify reliance upon the accuracy of information imparted in buying and selling, and the risk of falsity is on the one who makes a representation. [Citation.] This straightforward approach provides an essential predictability to parties in the multitude of everyday exchanges; application of comparative fault principles, designed to mitigate the often catastrophic consequences of personal injury, would only create unnecessary confusion and complexity in such transactions." (*Id.*, at p. 897.) The Supreme Court denied hearing.

[10]It is in the nature of the appellate process to deal with "errors" ascribed to the trial judge. We take this opportunity, therefore, to note that in his treatment of the partial indemnity issue, and throughout the trial, Judge Brauer displayed exemplary care and perspicacity in the context of a complicated piece of litigation.