MR. JUSTICE GULBRANDSON
dissenting and specially concurring.
I concur in the holding that it was reversible error to allow admission of evidence regarding appellant’s guilty pleas to charges of supplying liquor to minors.
I respectfully dissent from the holding that respondent’s recovery should not be reduced by his contributory negligence, if appellant is guilty of willful or wanton misconduct.
In Lawrence v. Harvey (Mont. 1980), 607 P.2d 551, 556, 37 St.Rep. 370, 374, this Court stated:
“Montana follows the rule of statutory construction that where a statute is adopted from a sister state, it is ordinarily presumed that the legislature borrows the construction placed upon it by the highest court of the state from which it is borrowed, although such construction is not binding upon this Court. Continental Oil Co. v. Board of Labor Appeals (1978), [178 Mont. 143], 582 P.2d 1236, 1240, 35 St.Rep. 1153, 1156; J. T. Miller Co. v. Madel (1978), [186 Mont. 49,] 575 P.2d 1321, 1322, 35 St.Rep 263, 265; State v. Murphy (1977), [174 Mont. 307], 570 P.2d 1103, 1105, 34 St.Rep. 1174, 1177; State ex rel. Mankin v. Wilson (1977), Mont., [174 Mont. 195], 569 P.2d 922, 924, 34 St.Rep. 1075, 1078 . . .”
The Supreme Court of the State of Wisconsin, the sister state from whom the Montana legislature borrowed the exact language of the comparative negligence statute, has confronted the precise issue that is now before this Court. In Bielski v. Schulze, (1962), 16 Wis.2d 1, 114 N.W.2d 105 111-113, the Supreme Court of Wisconsin analyzed this issue as follows:
*12 “The history of the development of gross negligence, its reason for existing, the content of the concept, and the inequitable results and consequences of its application have led us to decide the doctrine of gross negligence, as we know it, should be interred in the limbo of jurisprudence along side the doctrine of assumption of risk in negligence cases. See McConville v. State Farm Mut. Automobile Ins. Co. (1962), 15 Wis.2d 374, 113 N.W.2d 14. Gross negligence is an anomaly and contradiction in terms, and apparently considered in terms of degree rather than kind of negligence in our early cases. It gradually waxed strong in flesh and spirit on such terms as ‘such a degree of rashness or wantonness which evinced a total want of care,’ or a ‘willingness to harm although such harm may not have been intended,’ ‘rashly,’ ‘recklessly,’ and ‘wantonly,’ ‘little less than an intentional wrong,’ ‘willingness to perpetrate injury’ or ‘a purpose to take known chances of perpetrating an injury.’ Gradually gross negligence acquired by metamorphosis a new nature: — Ordinary negligence lay in the field of inadvertence but gross negligence in the field of actual or constructive intent to injure, and the two did not grade into each other. When the drinking cases increased in number, we reached the point that the concurrence of causal ordinary negligence and intoxication, as a matter of law, was gross negligence.
“One of the main reasons for the growth of the doctrine of gross negligence was to ameliorate the hardships of the common law doctrine of contributory negligence which barred recovery from a tortfeasor to one negligently causing, however slightly, his own injury. However, gross negligence being defined as different in kind and not in degree, could not be compared to ordinary negligence and, hence, contributory negligence was no bar to recovery. ((
“The doctrine of gross negligence as a vehicle of social policy no longer fulfills a purpose in comparative negligence. Much of what constituted gross negligence will be found to *13 constitute a high percentage of ordinary negligence causing the harm. Obviously, we are stressing the basic goal of the law of negligence, the equitable distribution of the loss in relation to the respective contribution of the faults causing it.”
In Li v. Yellow Cab Company of California (1975), 13 Cal. 3d 804, 825-26, 532 P.2d 1226, 1241, 119 Cal. Rptr. 858, 873, the Supreme Court of California addressed the issues as follows:
“Finally there is the problem of the treatment of willful misconduct under a systém of comparative negligence. In jurisdictions following the ‘all-or-nothing’ rule, contributory negligence is no defense to an action based upon a claim of willful misconduct (see Rest.2d Torts, Section 503; Prosser, Torts, supra, Section 65, p. 426), and this is the present rule in California. (Williams v. Carr (1968), 68 Cal.2d 579, 583, 68 Cal. Rptr. 305, 440 P.2d 505.) As Dean Prosser has observed, ‘[this] is in reality a rule of comparative fault which is being applied, and the court is refusing to set up the lesser fault against the greater.’ (Prosser, Torts, supra, Section 65, p. 426.) The thought is that the difference between willful and wanton misconduct and ordinary negligence is one of kind rather than degree in that the former involves conduct of an entirely different order, and under this conception it might well be urged that comparative negligence concepts should have no application when one of the parties has been guilty of willful and wanton misconduct. It has been persuasively argued, however, that the loss of deterrent effect that would occur upon application of comparative fault concepts to willful and wanton misconduct as well as ordinary negligence would be slight, and that a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional. (Schwartz, supra, Section 5.3, p. 108.) The law of punitive damages remains a separate consideration. (See Schwartz, supra, Section 5.4 pp. 109-111.)”
*14 Subsequent to the California Supreme Court’s decision in Li v. Yellow Cab Company of California, supra, the California Court of Appeals, Fifth District, expanded upon said decision in Sorenson v. Allred (1980), 112 Cal.App.3d 717, 725-26, 169 Cal.Rptr. 441, 446, as follows:
“In summary, we conclude that no defensible reason exists for categorizing willful and wanton misconduct as a different kind of negligence not suitable for comparison with any other kind of negligence. The adoption of comparative negligence in Li rendered such a separate category unnecessary since contributory negligence on the part of the plaintiff was no longer a total bar to recovery for a tortious injury. We apply an old axiom, ‘when the need for a rule ceases, the rule ceases.’
“The important by-product of the abolition of shades of negligence of other categorizations of fault would be the streamlining of the trial of cases. The submission to the triers of fact, particularly juries, of issues of liability upon the simply stated question, ‘Whose fault was it, and if both are at fault, what are the degrees of fault of each’ places the issues in a context more readily understood. The greater the elimination of such ‘buzz’ words as willful misconduct, last clear chance, [assumption of the risk], etc., the more the focus will be upon the real issues as we have noted above. The elimination of willful misconduct as a bar to recovery offers justice to both plaintiffs and defendants in situations where it now is all or nothing. Witness Ewing v. Cloverleaf Bowl, supra, 20 Cal.3d [389], 398, 143 Cal.Rptr. 13, 572 P.2d 1155, where plaintiff would be the beneficiary of the elimination of willful misconduct as a total bar to recovery.
“For the reasons discussed, we conclude that the doctrine of comparative negligence should apply where either party’s conduct is of the type traditionally described as willful and wanton. . . .”
The Court of Appeals, Second District, in Southern Pac. *15 Transp. Co. v. State (1981), 115 Cal.App.3d 116, 121, 171 Cal.Rptr. 187, 191 concurred with Sorenson, supra:
“The second unresolved issue in Li, the role of willful misconduct under comparative negligence, was recently addressed by the Court of Appeal in the Fifth District, which concluded that willful misconduct does not preclude application of the comparative-negligence rule. (Sorenson v. Allred (1980), 112 Cal.App.3d 717, 169 Cal.Rptr. 441.) In reaching its conclusion, the court noted that the contributory-negligence rule and the willful-misconduct rule together amount to a rule of comparative fault under which the lesser fault does not bar the greater. The court said that no defensible reason exists for categorizing willful misconduct as a kind of negligence not comparable with any other kind of negligence, and it concluded that the adoption of a rule of comparative negligence rendered superfluous the separate category of negligence described as willful misconduct. (p. 725, 169 Cal.Rptr. 441.)
“We agree with the Court of Appeals’ reasoning that the need for a separate category of negligence identified as willful misconduct, which was designed to alleviate the inequity of the all-or-nothing contributory negligence rule, has disappeared with the adoption of a rule of comparative negligence. The concept of willful misconduct remains viable only for an intentional injury which justifies punitive damages. Unless a defendant has intentionally injured a plaintiff, he is entitled to a reduction in his liability to the plaintiff, he is entitled to a reduction in his liability to the plaintiff to the extent plaintiff’s own negligence has contributed to the injury . . . Under the comparative negligence dispensation, every party remains liable for his proportionate share of fault, whether his conduct is described as simple negligence or as willful misconduct. (See Li v. Yellow Cab, supra, 13 Cal.3d, p. 829, 119 Cal.Rptr. 858, 532 P.2d 1226; American Motorcycle Association v. Superior Court, supra, 20 Cal.3d [178] p. 588, 146 Cal.Rptr. 182, 578 P.2d 899.)
*16 This Court has ruled that punitive damages cannot be reduced by the percentage of plaintiff’s contributory negligence. In Shahrokhfar v. State Farm Mutual Automobile Insurance Company (Mont. 1981), 634 P.2d 653, 658-59, 38 St.Rep. 1669, 1675, this Court held:
“This court has not previously ruled on the question of whether punitive damages can be reduced by the percentage of plaintiff’s contributory negligence. Since the purpose of punitive damages is to punish the defendant and not to compensate the plaintiff, we find that such an award bears no reasonable relationship to the plaintiff’s conduct. Therefore, we hold that punitive damages cannot be reduced by the percentage of plaintiff’s contributory negligence. This holding is supported by other jurisdictions. Amoco Pipeline Co. v. Montgomery (W.D.Okl. 1980), 487 F.Supp. 1268; Tampa Electric Co. v. Stone & Webster Engineering Corp. (M.D. Fla., Tampa Div., 1973), 367 F.Supp. 27.”
The jury in this case awarded punitive damages in the sum of $100,000, in addition to compensatory damages.
The holding that the compensatory damage award may not be reduced by the percentage of plaintiff’s negligence appears inequitable to me. If the defendant’s conduct is “willful” or “wanton,” the percentage of plaintiffs negligence will be determined to be much smaller in comparison, and a reduction in the compensatory award would be in line with the principle of comparative negligence, while leaving an award for punitive damages intact. Such a holding would prevent the plaintiff from profiting by his own negligence, but would preserve the policy of punishing “willful” or “wanton” acts.
In view of the majority holding that negligence and willful and wanton misconduct are different in kind, rather than degree, the Montana legislature may wish to resolve this problem, in the light of this Court’s past planetary usage of words such as ordinary negligence, gross negligence, willful negligence, wanton misconduct, I would find that the Montana legislature intended the apportionment of damages in *17 cases involving acts of negligence which fall short of being intentional.