[No. G013030. Fourth Dist., Div. Three. Dec. 29, 1993.]

EARLE J. BAIRD, Cross-complainant and Respondent, v.
CHUCK I. JONES et al., Cross-defendants and Appellants.

**COUNSEL**

Michael G. York for Cross-defendants and Appellants.

Oswald & Yap and Joseph M. Galosic for Cross-complainant and Respondent.

**OPINION**

**WALLIN, J.**—In this case we are asked to consider whether the comparative equitable indemnity doctrine, set forth by our Supreme Court in *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], permits an intentional tortfeasor to obtain indemnity from a concurrent intentional tortfeasor. We conclude that it does.

RE/MAX of Costa Mesa, Irvine, Newport Beach, Inc., and its employee, Chuck I. Jones, appeal a judgment requiring them to indemnify Earle J. Baird. Baird, Jones and RE/MAX were held jointly and severally liable to Tarek Samee for damages resulting from Samee's attempted purchase and rezoning of Baird's property. Baird cross-complained against Jones and RE/MAX for indemnity. The trial court found both Baird and Jones had made intentional and negligent misrepresentations to Samee. But the trial court found Jones's conduct was more egregious than Baird's. Therefore, Baird was entitled to equitable indemnification from Jones and RE/MAX. The judgment provided Baird could recover from Jones and RE/MAX the full amount of any damages he paid to Samee. We affirm.

On April 14, 1987, Baird signed a listing agreement with Jones and RE/MAX to sell property he and his wife owned in Costa Mesa. The property was zoned for construction of five units. Baird's wife did not sign the listing agreement. Jones knew Baird was not the sole owner and could not sell it without his wife's consent.

On July 6, Samee made an offer to purchase the property. The offer contained several contingencies, including that site plan approval be obtained from the City of Costa Mesa for a minimum of seven units. On July 13, Baird signed a counteroffer and told Jones he would obtain his wife's

signature. Jones advised Baird not to because the counteroffer would not be binding without her signature. He told Baird he would present the counteroffer to Samee to "test the waters." However, Jones actually intended to present the counteroffer to Samee to solicit Samee's acceptance, to consummate a binding contract, and to take care of any contingencies himself in order to provide a "non-contingent" sale to Baird.

Jones presented, and Samee accepted, the counteroffer believing it to be a binding contract. Samee also believed the counteroffer was a representation by Baird that he was either the sole owner or had full authority to sell the property.

After Samee accepted the counteroffer, and unknown to Baird who was out of town on vacation, Jones forged Baird's signature on a City of Costa Mesa planning application seeking a variance to build seven units on the property. Jones's wife was a notary public. Without her knowledge or permission, Jones signed his wife's signature to the planning application and stamped it with her notary seal to authenticate the forged signature of Baird. Jones sent the planning application to Samee which confirmed Samee's belief that the escrow was proceeding and the sale would be consummated according to the agreement. Samee commissioned engineering drawings. He also made expenditures to satisfy other contingencies in the agreement and to obtain rezoning of the property. The City of Costa Mesa approved the planning application on September 10.

When he returned from vacation, Baird informed Jones he no longer wanted to sell the property. Rather than inform Samee, Jones attempted to satisfy the remaining contingencies himself in an effort to save the sale. Samee continued his efforts to satisfy sale contingencies until October 9, 1987, when Jones finally informed him Baird did not want to sell.

Samee filed a complaint against Baird, Jones and RE/MAX for breach of contract, intentional and negligent misrepresentation and breach of the implied covenant of good faith and fair dealing. Baird cross-complained against Jones and RE/MAX for contractual and equitable indemnity. The trial court found Baird and Jones made intentional and negligent misrepresentations and were jointly and severally liable for damages of $21,835.94 plus interest and costs. The trial court found Baird was liable for intentionally misrepresenting to Samee that he had the authority to sell the property by signing the counteroffer without obtaining his wife's signature. The trial court also found Baird was vicariously liable for Jones's acts. The trial court held Baird was not entitled to contractual indemnification because of his own intentional conduct. However, the court concluded that under principles

of comparative equitable indemnification, Baird was entitled to full indemnification by Jones and RE/MAX for any damages which he paid to Samee: "[B]y reason of the fiduciary relationship between the parties, and the unscrupulous conduct of Jones, the actions of Jones are far more flagrant [than] those of Baird." The court denied Baird indemnification for Samee's attorney fees, set at $21,839.54. It also denied Baird's request to recover from Jones and RE/MAX his own attorney fees. Jones and RE/MAX appeal that part of the judgment ordering them to indemnify Baird.[1]

The sole issue presented on appeal is whether the comparative equitable indemnity doctrine permits an intentional tortfeasor to obtain indemnity from a concurrent intentional tortfeasor. We conclude that it does.

We begin with a brief excursion into the history of the comparative equitable indemnity doctrine and California's system of allocation of fault. Traditionally, California courts followed the all-or-nothing doctrines of contributory negligence and equitable indemnity. As between a plaintiff and a defendant, under the doctrine of contributory negligence, a plaintiff whose own negligence contributed to his or her injuries was completely barred from recovery from a negligent defendant. (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 809-810 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)[2] As between multiple defendants who were concurrent tortfeasors, under the equitable indemnity doctrine, a tortfeasor who was without *active* fault and who was only *secondarily liable* could completely shift liability to a concurrent tortfeasor who was *primarily liable*. (*American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d at p. 594.)

In the 1970's the California Supreme Court issued a series of rulings abolishing the all-or-nothing approach and instead allocating fault among the

---

[1]Baird appealed the judgment against him but later dismissed that appeal.

[2]California also has a contribution statute, Code of Civil Procedure section 875. Under the common law "no contribution" rule, a tortfeasor could not seek pro rata contribution towards the judgment from a concurrent tortfeasor. The common law rule was modified in 1957 by section 875 to allow contribution, *after* a tortfeasor had paid more than its pro rata share of the judgment, for the excess over the pro rata share. In the dissent, our collegue suggests we have avoided the section 875 preclusion of contribution to an intentional tortfeasor. However, by its own terms, that section does not "impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them." (§ 875, subd. (f).) Furthermore, the Supreme Court held in *American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d at page 604, that section 875 has no impact on the issue of equitable or comparative indemnity. We do not consider it inconsistent, or contrary to the purpose of section 875, to conclude an intentional tortfeasor cannot seek contribution but can seek comparative equitable indemnification. The former is simply a legal mechanism by which a judgment is divided on a pro rata basis without regard to the conduct of the parties. The latter, however, apportions liability in accordance with the relative fault of the parties.

parties. In *Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d 804, the Supreme Court abolished the contributory negligence doctrine, adopting instead comparative negligence or fault. "[T]he contributory negligence of the person injured . . . shall not bar recovery, but the damages awarded shall be diminished in proportion to the amount of negligence attributable to the person recovering." (*Id.* at p. 829.) The stated purpose of the new rule was to "assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." (*Ibid.*)

Subsequently, in *American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d 578, the Supreme Court considered the all-or-nothing character of the doctrine of equitable indemnity. It concluded that in view of the principles of *Li*, the equitable indemnity doctrine should be modified to allow indemnity among multiple tortfeasors based on comparative fault. (*American Motorcycle*, *supra*, 20 Cal.3d at p. 598.)

There is confusion among the parties as to whether there are now two distinct equitable indemnification doctrines. Often the term "equitable indemnity" will be applied to a total shifting of liability and the term "comparative indemnity" will be applied to a partial shifting of liability. Indeed, Jones and RE/MAX rely heavily on pre-*Li* and *American Motorcycle* cases discussing the old equitable indemnity doctrine in support of their position that there can be no equitable indemnification of an intentional tortfeasor. (See *Sammer* v. *Ball* (1970) 12 Cal.App.3d 607 [91 Cal.Rptr. 121]; *Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69 [4 Cal.Rptr. 379].) A review of California Supreme Court writings on this subject reveals there is only *one* doctrine. "Even when . . . a total shift of loss may be appropriate . . . [the] equitable indemnity claim does not differ in its fundamental nature from other comparative equitable indemnity claims. . . . '[C]omparative equitable indemnity includes the entire range of possible apportionments, from no right to any indemnity to a right of complete indemnity. Total indemnification is just one end of the spectrum of comparative equitable indemnification.' " (*Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 808 [251 Cal.Rptr. 202, 760 P.2d 399].)[3]

Comparative equitable indemnification exists to correct potential injustice. "Quite simply, [it] is a matter of fairness." (*Jaffe* v. *Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1191 [246 Cal.Rptr. 432].) The doctrine is applied to multiple tortfeasors to apportion loss in relation to their relative

---

[3]To avoid further confusion we shall employ the terminology most recently used by our Supreme Court in *Far West* (see also *Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1029 [269 Cal.Rptr. 720, 791 P.2d 290]) and refer to the doctrine as "comparative equitable indemnity."

culpability. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at pp. 595, 597-598.)

The doctrine has been applied in a vast range of tort cases. *American Motorcycle* applied comparative equitable indemnity between multiple negligent tortfeasors. (20 Cal.3d at p. 608.) Subsequent cases have allowed its application to multiple strictly liable defendants and among negligent defendants and strictly liable defendants. (*Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322, 328 [146 Cal.Rptr. 550, 579 P.2d 441].) Furthermore, the comparative principles apply when one party is negligent and the other is guilty of wilful misconduct. (*Allen* v. *Sundean* (1982) 137 Cal.App.3d 216, 225 [186 Cal.Rptr. 863]; *Sorensen* v. *Allred* (1980) 112 Cal.App.3d 717, 726 [169 Cal.Rptr. 441, 10 A.L.R.4th 937].) And the doctrine has been applied to allow a negligent defendant to shift the loss to an intentional tortfeasor. (*Weidenfeller* v. *Star & Garter* (1991) 1 Cal.App.4th 1 [2 Cal.Rptr.2d 14]. See also *Gardner* v. *Murphy* (1975) 54 Cal.App.3d 164 [126 Cal.Rptr. 302].) However, the Supreme Court has yet to consider whether comparative equitable indemnity applies to concurrent intentional tortfeasors. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1127 [252 Cal.Rptr. 122, 762 P.2d 46].)

▉ Based on the policies behind comparative fault, application of the principle is appropriate in this case. In *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], the Supreme Court held principles of comparative fault were applicable to an action by a negligent plaintiff against a strictly liable defendant. The court concluded loss should be equitably allocated even in an action not founded on the traditional concepts of fault. "If a more just result follows from the expansion of comparative principles, we have no hesitancy in seeking it, mindful always that the fundamental and underlying purpose of *Li* [v. *Yellow Cab Co., supra,* 13 Cal.3d 804] was to promote the equitable allocation of loss among all parties legally responsible in proportion to their fault." (*Daly* v. *General Motors Corp., supra,* 20 Cal.3d at p. 737.) The court further stated that "apportioning tort liability is sound, logical and capable of wider application than to negligence cases alone." (*Id.* at p. 742.) Consistent with the Supreme Court's view, we conclude comparative fault principles should be applied to intentional torts, at least to the extent that comparative equitable indemnification can be applied between concurrent intentional tortfeasors.[4]

▉ " 'Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify will be recognized in cases

---

[4]We do not consider whether an intentional tortfeasor is entitled to indemnification from a concurrent tortfeasor who is negligent or strictly liable. Nor do we opine on whether comparative fault allows allocation of loss between an intentional tortfeasor and a negligent plaintiff.

where community opinion would consider that in justice the responsibility should rest upon one rather than the other. This may be because of the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.' " (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at p. 595, fn. 4, quoting Prosser, Law of Torts (4th ed. 1971) § 52, p. 313.)

Some appellate and federal courts have concluded an intentional tortfeasor may not seek comparative equitable indemnification from a concurrent tortfeasor. We are unpersuaded by those cases, as they involve attempts to obtain comparative equitable indemnification from a *negligent* tortfeasor. In *Allen* v. *Sundean, supra,* 137 Cal.App.3d 216, the plaintiff's property was damaged in a landslide. The plaintiff sued the builder from whom the property had been purchased and the original property owner. The trial court found the original owner was 80 percent at fault for "wilful misconduct" in placing poor fill on the lot and 10 percent at fault for fraudulently concealing its presence. The builder was 10 percent at fault for negligent excavation. The court held the original owner could seek comparative equitable indemnity from the builder for his wilful misconduct, but there was no right to indemnification for fraudulent concealment, because it was an intentional tort. (*Id.* at p. 227. See also *Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154, 176 [180 Cal.Rptr. 95] [plaintiff's contributory negligence held no defense to intentional tort].)

*Allen* has been cited by federal courts in securities fraud cases in which the courts have held "an intentional tortfeasor cannot seek either total or partial equitable indemnity." (*In re Nat. Mortg. Equity Corp. Mortg. Pool Cert.* (C.D.Cal. 1987) 682 F.Supp. 1073, 1089; see also *Riverhead Sav. Bank* v. *National Mortg. Equity Corp.* (9th Cir. 1990) 893 F.2d 1109, 1116.)

Other courts have applied comparative fault principles to shift a proportionate amount of liability from a negligent tortfeasor to an intentional tortfeasor to deter a more culpable tortfeasor. Numerous commentators have suggested the policies behind *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804 and *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578 support application of comparative principles in some, if not all, cases involving intentional tortfeasors. (See Comment, *Far West Financial Corp.* v. *D & S Co. and the Abolition of Total Equitable Indemnity: What a Long, Strange Trip It's Been* (1989) 21 Pacific L.J. 147; Dear & Zipperstein, *Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations* (1984) 24 Santa Clara L.Rev. 1; Comment, *Comparative Fault and Intentional Torts* (1978) 12 Loyola L.A. L.Rev. 179.)

In *Weidenfeller* v. *Star & Garter, supra,* 1 Cal.App.4th 1, the plaintiff, assaulted in the parking lot of a bar, sued the owners for negligence in

failing to provide adequate lighting and security. The jury found the owners were 20 percent at fault, the plaintiff 5 percent at fault and the assailant 75 percent at fault. The trial court used these numbers to reduce the noneconomic damages under Civil Code section 1431.2, subdivision (a), which provides that a defendant is only liable for noneconomic damages in proportion to his fault. On appeal the plaintiff contended that principles of comparative fault could not be applied in intentional tort cases; therefore it was error to allocate the fault between the negligent defendant and the intentional tortfeasor.

In affirming, the court distinguished *Allen* v. *Sundean, supra,* 137 Cal.App.3d 216 and *Godfrey* v. *Steinpress, supra,* 128 Cal.App.3d 154. The court noted both of those cases involved an intentional tortfeasor who was attempting to shift responsibility for his act to a negligent party. (*Weidenfeller* v. *Star & Garter, supra,* 1 Cal.App.4th at p. 7.) Similarly, by applying comparative equitable indemnification in this case, the trial court did not allow an intentional tortfeasor to shift responsibility to a negligent party. Rather, the court ensured that one intentional tortfeasor, guilty of egregious conduct, would not be allowed to escape all responsibility.

 Comparative equitable indemnification cannot be applied if doing so is against public policy. (*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444-1445 [266 Cal.Rptr. 601].) Here, no public policy is violated by allowing Baird to seek comparative equitable indemnification from Jones and RE/MAX. Indeed, applying the doctrine will only further its own purposes: "The basic idea of indemnification is to spread or shift the burden of an obligation so that the responsible person will be motivated to effectuate a cure." (*County of Lassen* v. *State of California* (1992) 4 Cal.App.4th 1151, 1154 [6 Cal.Rptr.2d 359].)

Here, Baird, Jones and RE/MAX were held *jointly and severally* liable for the damages suffered by Samee. Obviously, Samee cannot collect his judgment twice. In the event Samee collects from Baird first, Jones and RE/MAX contend they should escape without payment. Under existing rules, Baird cannot seek contribution. (Code Civ. Proc., § 875, subd. (d).) However, equity requires a fair application of financial responsibility. Baird's intentional conduct, by comparison to Jones's, was fairly innocuous. He failed to obtain his wife's signature on the counteroffer, knowing it was necessary to make a legally binding contract for the sale of the property. However, he failed to obtain the signature because Jones, who was a fiduciary (*Ford* v. *Cournale* (1973) 36 Cal.App.3d 172, 180 [111 Cal.Rptr. 334, 81 A.L.R.3d 704] ), *told Baird he would not present it as a true counteroffer* but would simply use it to "test the waters" with Samee. Jones then forged Baird's

name to documents resolving contingencies in the sale which encouraged Samee to expend money. Baird merely followed Jones's advice and instructions. Requiring Baird to pay the entire judgment without hope of recovering some portion of it from Jones would be unconscionable. Indeed, such a conclusion would only reward the intentional tortfeasor who successfully hides his or her assets from a judgment creditor.

If it is equitable and just to allocate loss between concurrent negligent tortfeasors, a negligent tortfeasor and an intentional tortfeasor, or a negligent tortfeasor and a strictly liable defendant, then there is little logic in prohibiting an intentional tortfeasor from forcing another intentional tortfeasor to bear his or her share of liability.

Having determined the trial court properly applied principles of comparative equitable indemnification, we also conclude there was no abuse of discretion in the allocation made. Baird was allowed indemnification from Jones and RE/MAX for the total damages awarded Samee, $21,835.94, plus interest. However, he was not allowed indemnification for Samee's attorney fees of $21,839.54, or for his own costs and attorney fees.

The judgment is affirmed.

Sills, P. J., concurred.

**MOORE, J., Dissenting.**—I disagree with the majority's reliance on the comparative equitable indemnity doctrine to support its conclusion that Baird was entitled to indemnification by Jones and RE/MAX for any damages he paid to Samee. The majority relies heavily on *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] and *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. Yet, neither of those cases dealt with the situation here where an *intentional* tortfeasor seeks indemnification from a concurrent *intentional* tortfeasor with whom he has been found jointly and severally liable.

It has long been the law of this state that "the law will not aid a wrongdoer." (See, e.g., *Dow* v. *Sunset Tel. & Tel. Co.* (1912) 162 Cal. 136, 139 [121 P. 379].) The reason for the rule is that "the courts will not aid one tortfeasor against another because no one should be permitted to found a cause of action on his own wrong." (*Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].)

The majority recognizes that the doctrine of comparative equitable indemnity cannot be applied contrary to public policy. (Maj. opn., *ante*, at p. 692.)

(*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444-1445 [266 Cal.Rptr. 601].) However, the majority's broad allowance of indemnification violates public policy. Both Baird and his agent were found by the trial court to be guilty of fraud. This case does not involve an act of innocent stupidity. An action for damages for fraud is of common law origin. (Prosser & Keeton, Torts (5th ed. 1984) § 105, pp. 727-728.) The right to recover damages for fraud has been codified in Civil Code sections 1709 and 1710, which were first enacted in 1872. Public policy has always frowned on fraud and deception.

The opinion is also contrary to other public policy proscriptions. Civil Code section 1668 invalidates contracts purporting to exempt one for causing willful injury or violating the law. Insurance Code section 533 bars an insurer's liability for loss caused by an insured's willful act.

In addition, the majority glosses over Code of Civil Procedure section 875, subdivision (d) which unambiguously states, "There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person." There is no reason why an intentional tortfeasor should be entitled to indemnity, but not contribution, from a concurrent intentional tortfeasor. But such would be the result under the majority's opinion. My colleagues suggest there is a difference between contribution and indemnity. The Supreme Court disagrees. It has noted, ". . . the dichotomy between the two concepts is more formalistic than substantive . . ." (*American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d at p. 591), and pointed out Judge Learned Hand observed years ago that " '[I]ndemnity is only an extreme form of contribution.' [Citation.]" (*Id.* at p. 591, fn. 3.)

Code of Civil Procedure section 875, subdivision (b) provides that the "right of contribution shall be administered in accordance with the principles of equity." Awarding indemnity to an intentional tortfeasor is contrary to those principles.

The majority concedes that no court has applied comparative equitable indemnity to concurrent intentional tortfeasors (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1127 [252 Cal.Rptr. 122, 762 P.2d 46]), but nevertheless concludes that comparative fault principles should be applied. (Maj. opn., *ante*, at p. 690.) However, "As a general rule an implied right of indemnity does not exist among tortfeasors where the parties are in pari delicto . . . ." (*Herrero* v. *Atkinson, supra*, 227 Cal.App.2d at p. 74; see also *Byron Jackson Co.* v. *Woods* (1940) 41 Cal.App.2d 777, 783 [107 P.2d 639].) "The basis for indemnity is restitution . . . ." (Rest.2d Torts, § 886B, com., at p. 345.) Under the law of restitution, an indemnitee is not entitled to

indemnity "if his tort involves seriously wrongful conduct." (Rest., Restitution, § 88, subd. (b), at p. 394.) "Public policy prevents restitution in favor of a person who . . . has committed a seriously wrongful act. . . . Normally consciously criminal conduct including dishonest conduct involving fraud would be considered to be seriously wrongful." (*Id.*, com. c, at pp. 395-396.)

The majority acknowledges that federal courts, citing *Allen v. Sundean* (1982) 137 Cal.App.3d 216 [186 Cal.Rptr. 863], have held that under California law an intentional tortfeasor is not entitled to indemnification from a concurrent intentional tortfeasor (see *Riverhead Sav. Bank v. National Mortg. Equity Corp.* (9th Cir. 1990) 893 F.2d 1109, 1116; *In re Nat. Mortg. Equity Corp. Mortg. Pool Cert.* (C.D.Cal. 1987) 682 F.Supp. 1073, 1089), but seeks to distinguish those cases on the ground that they are "securities fraud cases." (Maj. opn., *ante*, at p. 691.) However, the holdings of those cases are not so limited. For example, *Riverhead Sav. Bank* holds that "[u]nder California state law it is clear 'that a securities wrongdoer *or anyone who has committed an active fraud* cannot escape loss by shifting his responsibility to another party.'" (893 F.2d at p. 1116, quoting *Stewart v. American Int'l. Oil & Gas Co.* (9th Cir. 1988) 845 F.2d 196, 200, italics added.) *In re Nat. Mortg. Equity Corp. Mortg. Pool Cert., supra*, 682 F.Supp. 1073 noted that, under California law, ". . . it is well-established that an intentional tortfeasor cannot seek either total or partial equitable indemnity." (*Id.* at p. 1089, citing Code Civ. Proc., § 875, subd. (d) and *Allen v. Sundean, supra*, at p. 216.) There is no basis in law or logic to expand the doctrine of comparative indemnity to include intentional tortfeasors. There has been no support for such an expansion in this state, other states, among the commentators, or in the Uniform Comparative Fault Act. (See *Allen v. Sundean, supra*, 137 Cal.App.3d at pp. 226-227.)

To arrive at its conclusion, the majority ignores the common law, Code of Civil Procedure section 875, subdivision (d), the Restatements of Torts and Restitution, and the Supreme Court's implication in both *Li* and *American Motorcycle* that intentional torts are to be excluded from the comparative fault system.

In *Li v. Yellow Cab Co., supra*, 13 Cal.3d 804, the court stated that, "It has been persuasively argued . . . that a comprehensive system of comparative negligence should allow for the apportionment of damages *in all cases involving misconduct which falls short of being intentional.*" (*Id.* at pp. 825-826, italics added.) Similarly, in *American Motorcycle Assn. v. Superior Court, supra*, 20 Cal.3d 578, the court concluded that *Li*'s rationale applied to the allocation of responsibility between negligent defendants and required

modification of the common law equitable indemnity doctrine. However, the court concurred in the observation that " '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were . . . *unintentionally responsible*, to be shouldered onto one alone . . . .' " (*Id.* at pp. 607-608, quoting Prosser, Torts (4th ed. 1971) § 50, p. 307, italics added.)

By virtue of his intentional acts, Baird should be precluded from indemnification by his concurrent intentional tortfeasors. It is neither equitable nor just for the courts to become involved in allocating loss between intentional tortfeasors, and I would not have the courts become involved in creating causes of action for intentional tortfeasors based on their own wrongs. Creating a right of indemnification in favor of an intentional tortfeasor will simply add another unnecessary burden to an already overburdened judicial system.

Appellants' petition for review by the Supreme Court was denied March 24, 1994.