EMPLOYERS INSURANCE OF WAU-
SAU and Federal Insurance Com-
pany, Plaintiffs,

v.

MUSICK, PEELER, & GARRETT, a Part-
nership; Leonard Castro, an Individual;
Robert Schuchard, an Individual;
K.M.G. Main Hurdman, a partnership,
Peat Marwick, Main & Co., a Partner-
ship; J.H. Cohn & Co., a Partnership;
Ed Bacani, an Individual; Robert Tor-
kar, an Individual; Does 1 through 100;
and Roes 1 through 300, Inclusive, De-
fendants.

No. 89–0705–J (LSP).

United States District Court,
S.D. California.

March 30, 1995.

Gerald L. McMahon, David Jordan Zubkoff, Seltzer, Caplan, Wilkins and McMahon, San Diego, CA, Lawrence H. Nagler, Nagler and Associates, Beverly Hills, CA, for Plaintiffs.

Charles A. Bird, Charles A. Danaher, Robert G. Steiner, Luce, Forward, Hamilton & Scripps, San Diego, CA, for Defendants.

## ORDER CORRECTING TYPOGRAPHICAL ERRORS; DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION; AMENDING ORDER TO CERTIFY ISSUE FOR INTERLOCUTORY APPEAL

JONES, District Judge.

Plaintiffs as well as defendants Musick, Peeler, & Garret, Leonard Castro and Robert Schuchard have moved the court to reconsider portions of the order filed November 22, 1994, ruling on defendants' motion to dismiss. In addition, the above named defendants have moved to certify a portion of the court's ruling for interlocutory appeal.

### I. *Plaintiffs' motion for reconsideration*

#### A. *Typographical errors re: 18th claim*

Plaintiffs point out that the court's order contained typographical errors mislabeling the negligence claim as "Negligent Misrepresentation" and stating both that the negligence claim was and was not dismissed. The court hereby corrects these typographical errors. First, the heading for the discussion of this claim was labeled "Negligent Misrepresentation" rather than "Negligence" as it should have been. Second, the conclusion of the order should state that the motion to dismiss was not granted as to the 18th claim.

#### B. *Equitable Indemnity for Federal claims*

The court's order held that plaintiffs could pursue only claims for contribution for the federal securities claims, not equitable indemnity. This holding was clearly stated to be based on two Ninth Circuit cases, principally *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir.1989). Plaintiffs have not presented the court with a reason to reconsider this ruling. Plaintiffs ask the court to follow a district court case, *In re National Mortgage Equity Corp.,* 682 F.Supp. 1073

(C.D.Cal.1987), decided two years before the controlling *Franklin* case. The court thoroughly considered the authority presented by plaintiffs in connection with its original order, and rejected the authority because it was inconsistent with what the Ninth Circuit decided in *Franklin.* Thus, the court denies the motion to reconsider the dismissal of claims 2, 4 and 6.

### C. State law equitable indemnity claims

The order dismissed the claims for equitable indemnity which were based on negligent misrepresentation and fraud. Plaintiffs move for reconsideration of this ruling.

The steps taken by the court in deciding to dismiss the fraud and negligent misrepresentation claims were as follows: (1) an insurer cannot proceed on a theory of subrogation if the payment the insurer made was merely voluntary; (2) an insurer cannot insure intentional torts, such as fraud and negligent misrepresentation; (3) therefore an insurer cannot proceed on claims for subrogation for payments made to cover settlements for fraud and negligent misrepresentation because they were voluntarily paid claims.

In employing this reasoning the court assumed, and defendants urged, that as a prerequisite to an insurer's pursuit of a claim as a subrogee under a theory of equitable indemnity, it must also have paid out in a settlement for the *identical* claims. The court further reasoned that under the California law governing the non-insurability of intentional torts, the payment for the misrepresentation and fraud claims was voluntary so that they could not serve as a basis for a subrogation action brought by the insurer.

■ Plaintiffs now point out that one of the assumptions in the court's original order does not find support in current California law. A claim for equitable indemnity does not have to be based on an *identical* claim in the underlying action. Rather, such a claim for equitable indemnity may be raised as to *any* claims that the original defendant might have been able to raise as long as there could be joint and several liability for the claims. *Molko v. Holy Spirit Assn.,* 46 Cal.3d 1092, 1127–1128, 252 Cal.Rptr. 122, 142–143, 762

P.2d 46, 66–67 (1988). The claims must relate to the *same legal injury,* but do not have to be identical claims.

Equitable indemnity was at first confined to claims between two *negligent* tortfeasors, as the Ninth Circuit noted in *Stewart v. American International Oil & Gas Co.,* 845 F.2d 196, 200 (9th Cir.1988). However, the concept has recently been expanded to two *intentional* tortfeasors causing the same legal injury. *Baird v. Jones,* 21 Cal.App.4th 684, 27 Cal.Rptr.2d 232 (1993).

■ In this case, there was the single asserted legal injury of defrauding investors in connection with the offering of securities, stemming from several alleged intentional torts. Thus, based on the above described state of the law, an insurer proceeding under a theory of subrogation may assert a claim for equitable indemnity even if the insurer was not required to pay to settle an *identical* claim. For instance, the insurer could have paid to settle a claim for negligent misrepresentation, which would form the basis for a claim for equitable indemnity based on a claim for fraud, since there would be joint and several liability for the legal harm.

However, the court has reviewed the case law, and holds that it is unsettled whether a statutory claim under the California Corporations Code could form the basis for equitable indemnity based on liability for a tort claim such as fraud or negligent misrepresentation.

■ The court holds that California courts would likely rule that equitable indemnity is available only among joint *tortfeasors,* as the language of the cases on this issue indicate. *See e.g. Molko,* 46 Cal.3d at 1128, 252 Cal. Rptr. at 143, 762 P.2d at 67, *quoting American Motorcycle Assn v. Superior Court,* 20 Cal.3d 578, 606, 146 Cal.Rptr. 182, 578 P.2d 899 (1978) ("A defendant who may be jointly and severally liable for all of the plaintiff's damages [is] permitted to bring other concurrent *tortfeasors* into the suit"); *Baird,* 21 Cal.App.4th at 688, 27 Cal.Rptr.2d 232 ("The sole issue presented on appeal is whether the comparative equitable indemnity doctrine permits an intentional *tortfeasor* to obtain indemnity from a concurrent intentional *tort-*

*feasor* "). The court has not located any California case law placing parties alleged to have violated the Corporations Code in the category of joint tortfeasors for the purpose of the comparable equitable indemnity doctrine. Further, it is significant that the Corporations Code provides for its own system of contribution and indemnification for Corporation Code violations. Corporations Code section 25505 states, "All persons liable under this chapter shall have a right of contribution against all other persons similarly liable" and provides for indemnification of a corporation by its officers, directors and controlling persons. Thus, based on the foregoing, the court holds that liability under the Corporations Code cannot be asserted as a basis for equitable indemnity.

■ The federal securities claims also cannot form the basis for equitable indemnity. First, as with Corporations Code liability, the California courts have not expressly extended the concept of comparative equitable indemnity to statutory violations such as federal securities law claims. Second, as stated in the courts' original order, federal contribution principles rather than state law indemnity principles govern liability spreading for federal securities law claims.

As a result of the foregoing analysis, the only two claims on which the insurers paid out in the settlement and which might form the basis for equitable indemnity in this action are the claims for fraud and negligent misrepresentation. Plaintiffs incorrectly asserted in their argument to the court that the underlying complaint in the Cousins litigation also contained a claim for negligence.

The court's analysis of whether the settlement for fraud and negligent misrepresentation may form the basis for the equitable indemnity claims asserted under a theory of subrogation necessarily consists of two steps: (1) whether the tort claims of negligent misrepresentation and fraud paid out in settlement in the Cousins litigation could form the basis of an equitable indemnity claim in this action; (2) whether such an equitable indemnity claim can be asserted under the theory of subrogation.

■ As to the first step, *Baird, supra,* established that equitable indemnity is available even for intentional torts. Thus, liability for negligent misrepresentation and fraud in the Cousins case could form the basis of an equitable indemnity claim.

■ As for the second step, the court holds that plaintiffs may not assert the equitable indemnity claim under the theory of subrogation. As explained in the court's original order, an insurer cannot assert subrogation rights based on a claim that was paid as a volunteer. The negligent misrepresentation and fraud claims are intentional torts, against which there can be no insurance coverage. The insurers paid as volunteers if they paid to settle the fraud and negligent misrepresentation claims. Therefore, the payments for the settlement of the fraud and negligent misrepresentation claims cannot be asserted as a basis for equitable indemnity claims.

Plaintiffs also ask the court to reconsider its ruling based on the argument that subrogation may be asserted based on a claim, paid as a volunteer, but paid on a good faith belief that there might be coverage. The court has already decided this issue in its previous order and noted that the payment in good faith was not a situation that applied here. The court has reviewed the issue, and finds no basis to reconsider its holding.

Plaintiffs ask the court to reconsider its ruling that negligent misrepresentation is not an intentional tort. The court has reviewed this issue and holds that the case law cited in the original order provides ample support for its decision that negligent misrepresentation, like fraud, is to be considered an intentional tort.

Thus, the court denies the motion to reconsider its ruling dismissing the 7th, 8th, 9th, 13th, 14th and 15th claims.

## II. *Defendants' motions*

### A. *Negligence claim*

■ The only state law claim not dismissed by the court's order was the 18th claim for negligence against the attorney defendants. Defendants argue that because of intervening controlling authority, the court

should reconsider the denial of the motion to dismiss the negligence claim. Specifically, defendants point out that a California Court of Appeal has held that a claim for negligent attorney malpractice is not assignable and further is not able to form the basis of an action brought by a subrogee. *Fireman's Fund Ins. Co. v. McDonald, Hecht, & Solberg*, 30 Cal.App.4th 1373, 36 Cal.Rptr.2d 424 (1994). As plaintiffs do not dispute, the 18th claim is clearly one for negligence in performing professional duties, and thus falls under the holding of *Fireman's Fund.*

Based on the intervening authority of *Fireman's Fund,* the court grants the motion to reconsider its decision on the negligence claim. *Fireman's Fund* is the existing controlling authority on the question of whether a subrogee may bring an action against an attorney for negligent professional conduct under California law.

Plaintiffs argue that the court should not follow the holding of *Fireman's Fund* because it conflicts with and overlooks California Supreme Court authority on the issue. The court has reviewed the authority cited by plaintiffs and concludes that *Fireman's Fund* is based on a reasonable and well supported analysis of existing case law, though an emphasis on other authorities might result in a different holding. There exists no square conflict between *Fireman's Fund* and other California authority which would cause the court to question whether *Fireman's Fund* represents the currently existing controlling authority on a question of state law. It is not the role of the federal court to second guess state courts in their rational interpretation of California law.

Thus, the court grants the motion for reconsideration of the 18th claim, and orders that the 18th claim is dismissed.

### B. Cal.Corp.Code § 25504.1

■ The court's order dismissed the 16th claim, which was against the attorney defendants for materially assisting in a violation of Cal.Corp.Code § 25401. The dismissal was based on the fact that the complaint did not allege privity between the alleged violators of section 25401 and the purchasers of the securities. The dismissal was *without* prejudice.

Defendants now move the court to make the dismissal *with* prejudice. They claim that *Fireman's Fund* precludes a subrogee for asserting a claim against the attorneys under Cal.Corp.Code section 25504.1. The court rejects this argument. *Fireman's Fund* dealt with a claim for negligent attorney malpractice, not a claim for an intentional statutory violation. *Fireman's Fund* was based on the tort duty that an attorney owes *personally* to a client, and that cannot be assigned. This reasoning is not applicable to a duty created by *statute* that is not personal to a client.

■ In the alternative, defendants argue that the complaint does not plead an *intent* to defraud as is required by section 25504.1. The court rejects this argument for two reasons. First, the complaint *does* allege an intent to defraud. Second, such a deficiency could not convince the court to change a dismissal without prejudice to a dismissal *with* prejudice. The claim is already dismissed without prejudice, and plaintiffs would be able to attempt to allege intent to defraud if this element was missing.

Thus, the court denies the motion to reconsider its ruling on the 16th claim.

### C. Interlocutory appeal

■ The court's order held that insurers subrogated to their insureds who were defendants in a settled securities action, may bring a claim for contribution against parties not named as defendants in the settled action. Defendants move to certify this ruling for interlocutory appeal.

Specifically, defendants move to certify the question of whether a *subrogee* may bring a contribution action under section 10(b) of the Securities Exchange Act of 1934. Defendants argue that there is substantial ground for difference of opinion on the court's holding, and that an appeal would speed resolution of the litigation. The court grants the motion to certify the issue for interlocutory appeal.

It is far from settled whether a subrogee may bring a claim for contribution under either the 1933 Securities Act or the 1934

Securities Exchange Act. The court has located no case law directly on point. In analyzing the question, the court looked to the general approach taken by the Supreme Court in this case and in other securities cases, such as *Central Bank v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) to reach its holding.

Pursuant to 28 U.S.C. § 1292(b) an interlocutory appeal may be taken "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The court finds that the requirements of section 1292(b) are met. After reviewing the arguments and case law presented by counsel, the court holds that there is a substantial ground for difference of opinion on whether a claim for subrogation may be implied from either the Securities Exchange Act of 1934 or the Securities Act of 1933.

According to the terms of this order, the only claims remaining are the 1st, 3rd and 5th claim for subrogation under section 10(b) of the 1934 Act against both the attorney and accountant defendants and section 11 of the 1933 Act against the accountant defendants. The court's ruling on subrogation related to both the section 11 and the section 10(b) claim. Further, this certification for interlocutory appeal also comprehends the section 11 and the section 10(b) claims. Thus, a successful appeal of the court's ruling would be dispositive of all of the claims currently before this court and would materially advance the ultimate termination of this litigation.

The court amends its order of November 22, 1994 to certify for interlocutory appeal the ruling that plaintiffs may pursue an implied right of subrogation under the federal securities law, specifically section 10(b) of the Securities Exchange Act of 1934 and section 11 of the Securities Act of 1933 based on plaintiffs' payment, as an insurer, of the settlement in an underlying securities action which did not include as parties any of the defendants named in plaintiffs' current action for contribution.

**IT IS SO ORDERED.**