Filed 11/25/20  Colbert v. Mardel Realty and Loans CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SONJA COLBERT, individually and as trustee, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MARDEL REALTY AND LOANS, INC. et al.,<br><br>    Defendants and Respondents. | A159409<br><br>(Contra Costa County<br>Super. Ct. No. MSC19-00744) |

Sonja Nicolle Colbert, in her personal capacity and as trustee for the Sonja Nicolle Colbert Living Trust, appeals from the denial of her special motion under Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] to strike the cross-complaint filed by respondents Mardel Realty and Loans, Inc. (Mardel) and Doris De Leon.  Colbert also challenges the trial court's order awarding $4,500 in attorney fees to respondents.  The trial court determined that Colbert had not demonstrated that the cross-complaint allegations arose from activity protected under the anti-SLAPP statute.  We conclude that the cross-complaint is based entirely on Colbert's petitioning

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.  "SLAPP" refers to a "strategic lawsuit against public participation."

1

activity and that respondents' claims are devoid of merit. We therefore reverse the trial court's orders and direct the court to enter a new order granting Colbert's anti-SLAPP motion. The matter is remanded for a determination of prevailing party attorney fees and costs to Colbert under section 425.16, subdivision (c).

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2018, respondent Doris De Leon, a real estate agent working for respondent Mardel, represented Miao Lan Lana Yu in a failed home purchase transaction with Colbert. Yu made a written offer to purchase a home in Hercules from Colbert for $1.1 million. The offer was accepted and Yu paid $10,000 in consideration for the agreement. Yu provided a loan preapproval letter for $880,000 along with a Wells Fargo Bank document indicating that $226,000 in additional funding would be provided by Harmony Beauty Med Spa and Harmony Beauty Spa (collectively, Harmony). Yu and Harmony failed to deposit the remaining funds into escrow for closing and the deal was never consummated.

On June 28, 2019, Colbert filed a second amended complaint against respondents Mardel and De Leon, alleging causes of action for fraud, negligent misrepresentation, and tortious interference with contract.[2] The complaint alleged that Yu and Harmony (Yu's alleged alter ego) had been under contract to purchase a property in Hercules owned by Colbert. It alleged that respondents Mardel and De Leon misrepresented Yu's loan approval status and only later disclosed to Colbert that Yu had not been preapproved for financing and had been shopping for an alternative property

---

[2] The second amended complaint asserted the same causes of action against Yu and Harmony in addition to claims for breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing. Yu and Harmony have not appeared in connection with this appeal.

2

while the Hercules property was in escrow.  Colbert claimed she would not have spent money improving the Hercules property and would not have taken the property off the market in advance of the close of escrow had respondents truthfully disclosed these material facts.  Respondents' demurrer to the fraud cause of action was sustained without leave to amend.

In September 2019, respondents filed a cross-complaint against Colbert for indemnity, contribution, and declaratory relief.  The cross-complaint alleged that Colbert filed an action against them for damages.  It expressly incorporated by reference all the allegations of the second amended complaint and did not affirmatively allege any facts concerning the circumstances surrounding the home purchase transaction.  The cross-complaint denied the complaint's allegations and asserted that, should Colbert prevail on any of her claims, respondents would be entitled to full or partial equitable indemnity and contribution because Colbert was responsible for causing her own alleged harm.  Respondents also asserted a right to their attorney fees and costs in the event judgment was entered against them.

On October 9, 2019, Colbert filed a motion to strike the cross-complaint under the anti-SLAPP statute.  The motion asserted that the cross-complaint allegations arose out of her protected petitioning activity.  Colbert also argued that the cross-complaint was retaliatory because respondents' attorney threatened to file a cross-complaint against her if she did not drop a pending motion to compel discovery.  Respondents denied that the cross-complaint had been filed in response to Colbert's discovery motion and asserted they had actually threatened to file a motion for sanctions, not a cross-complaint.

On February 10, 2020, the trial court denied Colbert's anti-SLAPP motion.  The court concluded that the premise behind Colbert's motion, that

3

the cross-complaint had been filed in retaliation for a discovery dispute, was an invalid basis for filing an anti-SLAPP motion. (See *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 924 (*Kajima*) ["[A] cross-complaint or independent lawsuit filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic."].) The court awarded respondents $4,500 in attorney fees after it found her motion to be frivolous  This appeal followed.

## DISCUSSION

### A. *Applicable Legal Principles*

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.) The purpose of anti-SLAPP motion is "to provide 'for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] The statute is to 'be construed broadly.' " (*Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1043 (*Simmons*).)

" 'We review de novo a trial court's decision on an anti-SLAPP motion. [Citation.] The anti-SLAPP statute requires a two-step process: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them . . . . If the

4

court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." [Citation.] In making these determinations the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." ' " (*Simmons, supra,* 50 Cal.App.5th at p. 1043.)

## B. *The Cross-Complaint Arises from Protected Activities*

The trial court found that Colbert failed to satisfy the first prong of the anti-SLAPP analysis because her argument that the cross-complaint was filed in retaliation for a discovery dispute "ha[d] no bearing on this motion." While the trial court was correct that a cross-complainant's litigation tactics are not the proper focus of inquiry under an anti-SLAPP analysis (*Kajima, supra,* 95 Cal.App.4th at p. 933, fn. 7), the court failed to address Colbert's alternative argument that the cross-complaint itself arises from protected activity because respondents' causes of action are based on Colbert's commencement of a lawsuit against them.

For a claim to "arise from" protected conduct, it cannot merely follow such conduct or even be triggered by such conduct. Rather, "the critical consideration is whether the cause of action is *based on*" the cross-defendant's exercise of his or her protected rights. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) This means "the [cross-]defendant's act underlying the [cross-complainant's] cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman*

5

(2002) 29 Cal.4th 69, 78; see *Mission Beverage Co., LLC v. Pabst Brewing Co.* (2017) 15 Cal.App.5th 686, 701 ["Only when the [action] that the [cross-complainant] attacks is *itself* protected activity will the anti-SLAPP statute apply."].)

As the Supreme Court explains, "[t]ypically, a pleaded cause of action states a legal ground for recovery supported by specific allegations of conduct by the [cross-]defendant on which the [cross-complainant] relies to establish a right to relief. If the supporting allegations include conduct furthering the [cross-]defendant's exercise of the constitutional rights of free speech or petition, the pleaded cause of action 'aris[es] from' protected activity, at least in part, and is subject to the special motion to strike authorized by section 425.16[, subd. ](b)(1)." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381–382 (*Baral*).)

Colbert contends she met her burden under the first prong of the section 425.16 analysis because the cross-complaint's causes of action are based entirely on the lawsuit she filed against respondents. Respondents do not dispute that section 425.16 protects all petitioning activity of a defendant, including the filing of a complaint. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115, 1117 (*Briggs*); § 425.16, subds. (e)(1) & (e)(4).) Rather, they argue that their claims for equitable indemnity and contribution do not arise from Colbert's complaint itself but are based on Colbert's own prelitigation conduct in thwarting the sale of the property.

In respondents' first and second causes of action for total or partial equitable indemnity, respondents allege that Colbert "commenced this civil action claiming that she sustained injuries and damages as a result of the tortious conduct of Cross-Complainants." The cross-complaint expressly incorporates by reference all the allegations in Colbert's complaint, and does

6

not affirmatively allege any facts itself concerning the failed home purchase transaction. Respondents then assert that if Colbert prevails on her claims, respondents will be entitled to indemnity for any damages awarded in the underlying action because "the damages alleged in the Complaint, if any, were caused by Cross-Defendants." Further, respondents complain that they have been forced to incur legal fees and costs "[a]s a direct, proximate, and foreseeable result of the claims alleged in the Complaint," and are entitled to be indemnified for their costs, fees, and expenses. In the third cause of action for contribution, respondents incorporate by reference their prior allegations and assert that they are entitled to contribution from Colbert "as a result of any judgment or settlement awarded" in the underlying action.

As the foregoing makes clear, respondents' equitable indemnity and contribution claims are based entirely on Colbert's initiation of a lawsuit against them and the outcome of that litigation. The legal ground upon which respondents base their equitable indemnity and contribution claims is that Colbert filed suit against them, and if respondents are found liable in the underlying action, Colbert should indemnify them for all or a portion of the loss because her actions were jointly responsible for the damages caused by the failed home purchase transaction. Respondents allege no independent basis for seeking relief against Colbert. In other words, the cross-complaint allegations relate to the litigation process itself and its claims are based upon Colbert's petitioning activity. Accordingly, we conclude that these claims arise from an act in furtherance of Colbert's right of petition. (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

Respondents point out that mere reference to a prior complaint is insufficient to trigger the protection of the anti-SLAPP statute. True, certain " '[a]llegations of protected activity that merely provide context, *without*

7

*supporting a claim for recovery*, cannot be stricken under the anti-SLAPP statute.' " (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1165, quoting *Boral*, *supra*, 1 Cal.5th at p. 394.)  But we disagree with respondents' contention that they were referencing the second amended complaint solely to deny Colbert's allegations.  As discussed above, the cross-complaint allegations involve Colbert's protected activity in filing suit and purport to support their claims for recovery.  If not for Colbert's lawsuit against them, and specifically, without a finding of liability against them in the underlying action, respondents would have no basis to recover under the cross-complaint. Respondents' allegations about Colbert's protected petitioning activity are not simply incidental to their claims for recovery.  (See *Sheley*, at pp. 1166–1167 [cross-complaint allegations that cross-defendants breached their fiduciary duties and were negligent by *"filing and maintaining a frivolous lawsuit"* and *"wasting corporate assets to fund the instant litigation against [respondent]"* arose out of protected petitioning activity and were not merely incidental to respondent's injuries].)  We conclude that appellant met her burden on the first step of her anti-SLAPP motion to strike.

C.      *Respondents' Cross-Complaint Has No Merit*

Because the trial court concluded that Colbert had not carried her burden of demonstrating that the cross-complaint arises from protected speech or petitioning activity, it did not address the second prong of the anti-SLAPP analysis.  A cause of action that arises from protected activity is subject to dismissal unless the plaintiff/cross-complainant establishes a probability of prevailing on the claim.  (§ 425.16, subd. (b)(1).)  A plaintiff/cross-complainant establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment

8

in the plaintiff's/cross-complainant's favor. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713–714.)

It is respondents' burden to show they "stated and substantiated a legally sufficient claim." (*Briggs, supra,* 19 Cal.4th at p. 1123.) In satisfying their burden, respondents must demonstrate that they pleaded a valid cause of action. (*Anschutz Entertainment Group, Inc. v. Snepp* (2009) 171 Cal.App.4th 598, 642–643.) Based on our independent review of the record and the applicable law, we conclude that respondents' causes of action for equitable indemnity and contribution are devoid of merit and require dismissal.

### i. *Applicable Legal Principles*

"Equitable indemnity is an equitable doctrine that apportions responsibility *among tortfeasors* responsible for the same indivisible injury on a comparative fault basis. [Citation.] '[T]he equitable indemnity doctrine originated in the common sense proposition that when two individuals are responsible for a loss, but one of the two is more culpable than the other, it is only fair that the more culpable party should bear a greater share of the loss.' [Citation.] A right of equitable indemnity can arise only if the prospective indemnitor and indemnitee are mutually liable *to another person* for the same injury." (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1176–1177, italics added.)

" 'The purpose of equitable indemnification is to avoid the unfairness, under joint and several liability theory, of holding one defendant liable for the plaintiff's entire loss while allowing *another responsible defendant* to escape " 'scot free' " [citation].' [Citation.] A defendant 'has a right to bring in *other tortfeasors* who are allegedly responsible for plaintiff's action through a cross-complaint . . . for equitable indemnification.' " (*Platt v. Coldwell Banker*

9

*Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444, italics added.)  " ' "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible." ' " (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700.)

Contribution is a creature of statute and apportions the loss equally among several joint tortfeasors.  (§ 875.)  A contribution claim "requires a showing that one of several joint tortfeasor judgment debtors has paid more than a pro rata share of a judgment."  (14A Cal.Jur.3d Contribution and Indemnification (2008) § 101; § 875, subd. (f); see *Coca-Cola Bottling Company v. Lucky Stores, Inc.* (1992) 11 Cal.App.4th 1372, 1378 [contribution may be sought only after the rendition of a judgment declaring more than one defendant jointly liable to the plaintiff].)

### ii. *The Cross-Complaint Does Not State a Viable Cause of Action*

Respondents' cross-complaint is based on the flawed premise that Colbert can prevail against them in the underlying action and still be considered a "joint tortfeasor" for purposes of apportionment under equitable indemnification and contribution principles.  Respondents cite no direct authority in support of this claim.  As the foregoing principles describe, equitable indemnification and contribution claims are colorable when multiple joint tortfeasors are responsible for damages to a *separately* injured party, and one tortfeasor has paid more than his or her proportionate share of the damages.

In *Seamen's Bank v. Superior Court* (1987) 190 Cal.App.3d 1485 (*Seamen's*), for example, Bank of America brought suit against its employees for losses resulting from Bank of America's settlement with a group of defrauded investors.  (*Id.* at pp. 1488–1489.)  The bank alleged that the

10

employees violated their duty of care in managing the investors' transactions. (*Id.* at p. 1489)  The employees filed cross-complaints against the defrauded investors, alleging that the employees were entitled to equitable and implied contractual indemnification from the investors because the investors violated a duty to the bank to review their investment materials and behave prudently in connection with their investment decisions.  (*Seaman's*, at p. 1490.)  The trial court overruled the investors' demurrer to the cross-complaint.  (*Ibid.*)

The *Seaman's* court issued a peremptory writ of mandate ordering the trial court to sustain the investors' demurrer, holding that a defendant has no cause of action for equitable indemnity against the victim of his own tort. (*Seamen's, supra,* 190 Cal.App.3d at p. 1492.)  The court reasoned that the investors and the bank employees were not joint tortfeasors because the investors owed no duty of care to the bank.  Moreover, the court found no equitable basis to sustain a tortfeasor's claim for indemnity *from his victim*. (*Id.* at pp. 1492–1493.)

Respondents assert they are entitled to equitable indemnity based on Colbert's actions because she was the party that caused the purchase deal to fall through.  Respondents claim they "were making good-faith efforts to accomplish the agreed-upon purchase, and it was Respondents' [*sic*] actions— in refusing to put motors and pumps into working order, refusing to agree to extend the time for escrow to close, and in possibly misrepresenting the ownership of the property at issue—that caused the purchase deal not to be accomplished."  But as the *Seaman's* court recognized, the place to litigate Colbert's comparative fault is in the underlying action itself, "not in an indemnity action by [respondents] against [Colbert] under the fiction

11

[Colbert] [her]self is a tortfeasor." (*Seaman's*, *supra*, 190 Cal.App.3d at p. 1492.)

*Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188, illustrates this point. The appellate court considered whether a developer sued by a homeowners association for construction defects could cross-complain for equitable indemnification against the association's board of directors for their conduct which contributed to the damages arising from the original defects. (*Id.* at p. 1191.) The *Jaffe* court held such a cross-complaint fails to state a cause of action because (1) equivalent relief would be available to the developer by way of an affirmative defense; and (2) pitting individual board members against the association in such a cross-complaint would "jeopardize or entangle a special relationship which strong policies dictate be preserved." (*Id.* at p. 1193.) The court observed, "equitable indemnification . . . is unwise and unnecessary where, as here, a sensitive relationship exists between the association and its board of directors, *and when, as here, the relationship between the parties alone will, in the resolution of the lawsuit, result in the apportionment to defendant of only that liability for which he is responsible.*" (*Id.* at p. 1190, italics added.)

Respondents here can obtain the same relief through the affirmative defenses they have raised in the underlying action. In the third affirmative defense set forth in their answer to the second amended complaint, they allege: "Defendants are informed and believe and thereon alleges [*sic*] that Plaintiff was careless and negligent and, due to this carelessness and negligence, proximately caused and contributed to the injuries and damages complained of, if any. Accordingly, the pro rata share of fault of Plaintiff reduces the recovery of damages, if any, by Plaintiff against Defendants." Because the underlying action will resolve whether Colbert's negligence

12

contributed to her own injuries and therefore whether any loss should be apportioned among the parties, equitable indemnification and contribution claims are unnecessary to provide redress to respondents. (See *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 588–591.)

Respondents also argue that under comparative equitable indemnity principles, an intentional tortfeasor may obtain indemnity from a concurrent intentional tortfeasor, citing to *Baird v. Jones* (1993) 21 Cal.App.4th 684, 688, 693. In *Baird,* the trial court allowed one defendant to seek equitable indemnification from another more culpable defendant where both defendants had been found liable for making negligent and intentional misrepresentations. (*Id.* at pp. 687, 693.) *Baird* is inapposite. Here, Colbert is not a codefendant or concurrent tortfeasor; she is plaintiff in the underlying action. Respondents have identified no authority which would permit a tortfeasor to seek equitable indemnification or contribution from the victim of their wrongdoing.

As the authorities makes clear, "an action for equitable indemnity is premised upon a joint legal obligation to another for damages." (*Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787). "[Respondents'] equitable indemnity claim lacks the essential element of common liability to an injured person. " (*Ibid.*). Accordingly, respondents have failed to carry their burden of demonstrating that the cross-complaint has minimal merit.

## D.     *Colbert Is Entitled to Attorney Fees*

Section 425.16, subdivision (c)(1) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." "Under this provision, 'any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.' " (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 338.) As the

13

prevailing party on her anti-SLAPP motion, Colbert is entitled to mandatory attorney fees under section 425.16, subdivision (c).

## DISPOSITION

The orders denying Colbert's section 425.16 motion and awarding attorney fees to respondents are reversed.  The trial court is directed to enter a new order granting Colbert's anti-SLAPP motion.  The matter is remanded to the trial court to determine an attorney fee award to Colbert as the prevailing party under section 425.16, subdivision (c).  Colbert shall recover her costs on appeal.

_____

Sanchez, J.

WE CONCUR:

_____

Margulies, Acting P. J.

_____

Banke, J.

*A159409 Colbert v. Mardel Realty and Loans, Inc.*