### DON KING PRODUCTIONS/KINGVISION, Plaintiff,

### v.

### John C. FERREIRA, an individual, John C. Ferreira, dba Time Out Sports Bar and Grill, et al., Defendants.

### Bruce DOHERTY, an individual, and dba The Menlo Club, Plaintiff/Defendant,

### v.

### WIRELESS BROADCASTING SYSTEMS OF SACRAMENTO, INC., dba Pacific West Cable Television, a California Corporation, Defendant.

No. Civ. S–96–0063 WBS/PAN.

United States District Court, E.D. California.

Dec. 24, 1996.

Matthew J. Webb, Law Offices of Matthew J. Webb, Oakland, CA, for Don King Productions/Kingvision.

Victor L. Waid, Law Offices of Victor L. Waid, Sacramento, CA, for Bruce Doherty.

Sandra L. Sava, Law Offices of Jones & Dyer, Sacramento, CA, for Wireless Broadcasting Systems of Sacramento, Inc. dba Pacific West Cable Television.

### MEMORANDUM AND ORDER

SHUBB, Chief Judge.

Third-party defendant Wireless Broadcasting Systems of Sacramento, dba Pacific West Cable Television ("PWC"), moves for summary judgment on defendant Bruce Doherty's third-party complaint against it. Fed. R.Civ.P. 56. The issue is whether a person sued under 47 U.S.C. § 553 or § 605 for displaying an unauthorized broadcast of a boxing match to commercial patrons may

seek indemnity from a satellite television subscription company for failing to "scramble" the signal. For the reasons stated below, the court holds that no such right of indemnity exists.

## I.

### BACKGROUND

This action concerns the unauthorized broadcasts of the Chavez v. Lopez boxing match on December 10, 1994. Plaintiff Don King Productions ("Don King") alleges that it contractually acquired the proprietary rights to distribute, promote, and exhibit the boxing match via closed circuit television. Plaintiff claims it entered into agreements with commercial entities which became entitled as licensees to publicly exhibit the boxing match to patrons in their establishments. Plaintiff sued several parties, including Doherty, for exhibiting the boxing match to patrons without an agreement with plaintiff to do so. It alleged claims under 47 U.S.C. § 553, enacted as part of the Cable Communications Policy Act of 1984, 47 U.S.C. § 605, enacted as part of the Communications Act of 1934 (collectively, the "Act"), as well as state law claims for conversion and intentional interference with prospective economic advantage.

Doherty admits he received the boxing match and displayed it to patrons at his commercial establishment, the Menlo Club. (Third–Party Plaintiff's Response to Statement of Undisputed Facts ¶ 23.) Doherty further admits he received and displayed the boxing match without prior request or arrangement with either Don King or PWC. (Id. ¶ 14.) He claims, however, that he "involuntarily" received the boxing match at the Menlo Club through the satellite receiving equipment installed by PWC. Because he received the match without having ordered it, he assumed that PWC had made the program available to show to his commercial patrons. (Doherty Decl. ¶¶ 12, 20.)

· Doherty has filed a third-party complaint against PWC for "Implied Contractual Indemnity" and "Indemnity for Negligence," alleging that PWC's failure to "scramble" the signal for the boxing match has subjected him to liability absent any fault of his own.

PWC moves for summary judgment on Doherty's claims, arguing that the third-party complaint fails as a matter of law.

## II.

### STANDARD OF REVIEW

Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage the question before the court is whether there are genuine issues for trial. The court does not weigh evidence or assess credibility. *Id.*

## III.

### DISCUSSION

A defendant may file, as a third-party plaintiff, a complaint against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). Doherty states that "the major issue is whether there is [supplemental] jurisdiction enabling the court to adjudicate Doherty's claims" against PWC. That is not the issue. Only after the court determines that Doherty may seek indemnity can it decide whether it has jurisdiction to adjudicate those claims.

 Don King has asserted both federal and state law claims against Doherty. The scope and limitation of Doherty's right to indemnity for damages resulting from having violated a federal statute is governed by federal law. *See Mortgages, Inc. v. U.S. Dist. Court for the Dist. of Nevada,* 934 F.2d 209, 212 (9th Cir.1991) (when liability is grounded on a federal statute, the court must look to federal law, not state law, to determine a defendant's right to indemnity); *Gil-*

*more v. List & Clark Constr. Co.,* 866 F.Supp. 1310, 1312–13 (D.Kan.1994) (state law creating right to indemnity or contribution inapplicable where the defendant's liability for which indemnity is sought arises solely under a federal statute). In contrast, the scope and limitation of his right to indemnity for liability grounded on the state law claims is governed by state law. *See Northwest Airlines, Inc. v. Transport Workers Union of Am.,* 451 U.S. 77, 96–97 n. 38, 101 S.Ct. 1571, 1583 n. 38, 67 L.Ed.2d 750 (1981) (acknowledging a right to contribution under state law in cases in which state law supplied the rule of decision). Doherty's right to indemnity under each set of claims must therefore be analyzed separately. The court assumes for purposes of this analysis that Doherty will be liable under all claims asserted against him.

## A. Federal Claims

■■■ Doherty argues he is entitled to indemnity from PWC because he relied on PWC to provide him with properly functioning equipment and to block his receipt of programs he was not authorized to view, and PWC's failure to do so proximately caused his liability under 47 U.S.C. § 553(a)(1) and § 605(a), which prohibit receiving, viewing, and publishing misappropriated signals acquired via satellite. A defendant held liable under a federal statute has a right to indemnity or contribution from another who has also violated the statute only if such right arises through (1) the express or implicit creation of a right of action by Congress, or (2) the power of the courts to formulate federal common law. *Mortgages, Inc.,* 934 F.2d at 212. There are no reported cases addressing the availability of indemnity or contribution under either § 553 or § 605 of the Act.

■■■ Nothing in the Act mentions or implies a right to indemnity or contribution. In the absence of such guidance, the court should not create a federal common law right to indemnity or contribution for two reasons. First, Congress has established a comprehensive remedial scheme that provides for criminal penalties, civil penalties, and a private right of action allowing aggrieved persons to seek damages, injunctive relief, and attorneys' fees. 47 U.S.C. § 553(b)–(c) and § 605(e). Where, as here, Congress has done so, there is a strong presumption that Congress did not intend the courts to supplement the remedies enacted. *Mortgages, Inc.,* 934 F.2d at 213. Second, both § 553 and § 605 provide for a minimum level of statutory damages that must be awarded to an aggrieved person, even if the violator was not aware, and had no reason to believe, that his or her acts constituted a violation of the Act. 47 U.S.C. § 553(c)(3)(C) and § 605(e)(3)(C)(iii). In contrast, the Act allows an aggrieved person to recover substantially increased damages from willful violators. *Id.* at § 553(c)(3)(A)–(B) and § 605(e)(3)(C)(i)–(ii).

Doherty urges the court to create a right of indemnity because he is without fault and thus should be entitled to some form of recourse. But the statute already takes into account his degree of culpability by allowing him, as an alleged unknowing violator, to seek to have his damages reduced to the statutory minimum. Creating a federal common law right to seek indemnity for such damages would undermine the regulatory function of the Act itself. *See Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980) (where purpose of the act is regulatory rather than compensatory, permitting indemnity would undermine the statutory purpose of assuring diligent compliance). The court therefore declines to create a federal common law right to seek indemnity or contribution for violations of § 553 or § 605 of the Act.

■■■ Alternatively, Doherty contends that state law creates a right to indemnity on the federal claims. The Ninth Circuit, however, has rejected this precise contention. *See Mortgages, Inc.,* 934 F.2d at 214 (stating that "[b]ecause there is no basis in the [False Claims Act] or federal common law to provide a right to contribution or indemnity in a [False Claims Act] action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result"); *see also Lyle v. Food Lion, Inc.,* 954 F.2d 984, 987 (4th Cir.1992) (to engraft an indemnity cause of action un-

der state law upon an otherwise comprehensive federal statute "would run afoul of the Supremacy Clause of the Constitution") (quoting *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1264 (5th Cir.1986)); *Gilmore,* 866 F.Supp. at 1312–13 (state law creating right to indemnity or contribution inapplicable where the defendant's liability, for which indemnity or contribution is sought, arises under a federal statute). Accordingly, Doherty cannot seek indemnity for his liability under § 553 or § 605 of the Act.

**B. State Claims**

■ As discussed above, Doherty's ability to seek indemnity for his liability under the state law causes of action is governed by state law. The court therefore looks to California law to determine whether Doherty is entitled to seek indemnity for those claims.

■ Doherty has been sued for conversion and for intentional interference with prospective economic advantage. Conversion is an intentional tort. *Collin v. American Empire Ins. Co.,* 21 Cal.App.4th 787, 810, 26 Cal.Rptr.2d 391 (1994). Intentional interference with prospective economic advantage is, by description, also an intentional tort. *See Blank v. Kirwan,* 39 Cal.3d 311, 216 Cal. Rptr. 718, 703 P.2d 58 (1985).

■ Doherty's claims for indemnity, on the other hand, rest on the theories that PWC was negligent and breached its duty to properly perform contractual obligations. These theories do not require, nor has Doherty offered any evidence to show, that PWC's actions were willful or intentional. While California's equitable indemnity doctrine permits an intentional tortfeasor to obtain indemnity from a concurrent intentional tortfeasor, *Baird v. Jones,* 21 Cal.App.4th 684, 688, 27 Cal.Rptr.2d 232 (1994), California courts have not gone so far as to allow intentional tortfeasors to seek indemnity against a concurrent tortfeasor who is only negligent or strictly liable. *See id.* at 690 n. 4, 27 Cal.Rptr.2d 232; *Weidenfeller v. Star & Garter,* 1 Cal.App.4th 1, 6, 2 Cal.Rptr.2d 14 (1991) (an intentional tortfeasor cannot rely on someone else's negligence to shift responsibility for his or her own conduct) (citing cases). Because Doherty has neither alleged

nor shown that PWC acted intentionally or willfully, California law does not permit him to seek indemnity from PWC for his liability for conversion or intentional interference with prospective economic advantage.

## IV.

### *CONCLUSION*

Because Doherty cannot properly seek indemnity for any liability he may incur in the underlying lawsuit, PWC's motion for summary judgment on Doherty's third-party complaint for indemnity against it must be granted.

IT IS THEREFORE ORDERED that third-party defendant's motion for summary judgment be, and the same hereby is, GRANTED.