DON KING PRODUCTIONS,
INC., Plaintiffs,

v.

PANADERIA Y REPOSTERIA
LA MILAGROSA, et al.,
Defendants.

Civil No. 06–1477 FAB.

United States District Court,
D. Puerto Rico.

March 19, 2008.

Glenn Carl James–Hernandez, James Law Offices, Guaynabo, PR, for Plaintiffs.

Jose Luis Ortiz–Alvarado, Coamo, PR, pro se.

Isidora Torres–Martinez, Coamo, PR, pro se.

Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

Pending before the Court is the summary judgment motion filed by defendants Municipality of Sabana Grande, Miguel G. Ortiz Velez, and the conjugal partnership comprised by Mr. Ortiz Velez and his wife (Docket No. 38). Plaintiff Don King Productions, Inc. opposed defendants' motion for summary judgment (Docket No. 44). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment.

### I. *Factual Background*

On May 14, 2005, approximately three hundred people watched the telecast of the championship boxing match between Felix ("Tito") Trinidad and Winky Wright in the town square ("plaza publica") of defendant Municipality of Sabana Grande ("Sabana Grande"). Prior to the match, Sabana Grande contracted with Jonathan Acosta Ramirez, doing business as Fartronics Satellite Service ("Fartronics") (no joke), to broadcast the match. Sabana Grande paid $4,000.00 to Fartronics for the broadcast. The contract was signed by defendant Miguel G. Ortiz Velez, as the Mayor of Sabana Grande, and Jonathan Acosta, Fartronics' representative (Docket No. 45, Exh. A). Sabana Grande complied with all local legal regulations applicable to government contracting (Docket No. 38–2).

Unfortunately, however, neither Sabana Grande nor Fartronics acquired a commercial license from Don King Productions-the entity licensing the pay-per-view event-to show the match (Docket No. 44, Exh. A). Fartronics and its representative, Jonathan Acosta, are not parties to this action.

## II. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trialworthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## III. *Discussion*

Sabana Grande and its Mayor raise two arguments in support of their summary judgment motion. First, they argue that plaintiff failed to establish that they had the specific intent necessary to violate 47 U.S.C. § 553. Second, defendants argue that there is no basis for imposing personal liability upon defendant Mayor Ortiz because there are no allegations of the Mayor taking any actions in his personal capacity.

### A. Unauthorized Reception of Cable Service

Pursuant to 47 U.S.C. § 553(a)(1) "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Assisting in the interception or receipt of communication service offered over the cable system is defined by statute as including "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communication service offered over a cable system in violation of subparagraph (1)." 47 U.S.C. § 553(a)(2). The statute allows any aggrieved person to bring a civil action seeking damages, attorney's fees and costs, as well as injunctive relief in a United States district court or any court of competent jurisdiction. 47 U.S.C. § 553(c).

Defendants aver that 47 U.S.C. § 553 only provides for liability where "there is specific intent to incur in piracy." (Docket No. 38, p. 4.) As authority for their position that there is a specific intent element for liability, defendants cite *United States v. Gardner*, 860 F.2d 1391 (7th Cir.1988) and *Time Warner Cable of New York City v. Cable Box Wholesalers*, 920 F.Supp. 1048 (D.Ariz.1996).

In *United States v. Gardner*, the Seventh Circuit Court of Appeals affirmed the *criminal* conviction of a defendant charged with violating 47 U.S.C. § 553. In *Gardner*, the defendant was charged with two separate incidents of selling cable converter boxes which he advertised as enabling users of basic cable to intercept premium cable television after only paying the minimum monthly subscription rate. 860 F.2d at 1393. The Seventh Circuit Court of Appeals cited from the House Report which accompanied the Cable Communica-

tions Policy Act, and noted that a *distributor's* intent is a dispositive factor under 47 U.S.C. § 553. *Id.* at 1397–98 (*citing* H.R. REP. NO. 934, 98th Cong., 2d Sess. 83–84 (1984), *reprinted* in 1984 U.S. CODE CONG. & ADMIN. NEWS 4655, 4720–21) (emphasis added).

*Cable Box Wholesalers* presented a similar factual scenario to *Gardner*, although there the action was civil rather than criminal. In *Cable Box Wholesalers*, defendants sold "non-addressable decoders." 920 F.Supp. at 1049. These decoders were capable of intercepting cable signals of various cable companies, depending upon the particular type of scrambling technology used and the signals to be decoded. *Id.* at 1049–50. The defendants also sold "bullet busters" which protect illegal decoders from cable company signals that detect and may disable pirate decoders. *Id.* at 1050. The *Cable Box Wholesalers* court treated the defendants intent to sell devices used for cable piracy as a dispositive factor. *Id.* at 1052–53.

Both *Gardner* and *Cable Box Wholesalers* are inapposite to this case, however, because they dealt with liability for "assist[ing]" in the receipt or interception of a cable signal and not with the receipt of a signal without authorization. Section 553 provides for liability for two different types of acts: (1) the unauthorized receipt or interception of a cable operator's communication, as well as for (2) assisting in the unauthorized interception or receipt of a cable operator's communication. It is only the act of "assisting" which includes an element of specific intent to facilitate the unauthorized reception of a cable communication. 47 U.S.C. § 553(a)(2). There is no such element required for finding liability for the receipt or interruption of a cable communication.

Congress did not require specific intent for liability as an unauthorized receiver or

interceptor of a cable signal; it is implicit in the damages subsection of the statute that liability may result where a violator had no intent to violate the statute. 47 U.S.C. § 553(c)(3)(C)("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100."); *c.f., Doherty v. Wireless Broad. Sys.,* 151 F.3d 1129, 1131 (9th Cir. 1998) (holding that 47 U.S.C. § 553 does not provide for a right to indemnity and finding that the remedies set forth in the statute are comprehensive, taking into consideration the degree of the violator's culpability and providing for reduced damages where the violator was unaware of a violation); *Don King Productions/Kingvision v. Ferreira,* 950 F.Supp. 286, 289 (E.D.Cal.1996) (same).

Thus, it is immaterial for purposes of determining liability under 47 U.S.C. § 553 that Sabana Grande did not intend to receive or intercept a cable communication without authorization. Plaintiff will survive the summary judgment motion by Sabana Grande because it is uncontested that the municipality received the signal (and displayed the match for all to see in the town square). The fact that Sabana Grande contracted with a third party and paid a significant amount of money to secure the broadcast of the Trinidad/Wright match may reduce the amount of statutory damages it may have to pay under 47 U.S.C. § 553(c)(3)(C), but it does not erase liability for the unauthorized reception of the match. Accordingly, the Court **denies** defendants' motion for summary judgment as regards the claim brought against Sabana Grande.

B. *Claim against Mayor Ortiz in his personal capacity*

Defendants argue that the claim against Mayor Ortiz should be dismissed because "[t]here is no evidence that the Mayor undertook any actions in his individual capacity." (Docket No. 38, p. 5.) Defendants also note that plaintiff, in both the original and amended complaint, treated the Mayor as if he were the owner of a business, rather than the Mayor of an autonomous government entity (Docket No. 1, ¶¶ 9–10; Docket No. 37, ¶¶ 9–10). This suggests that plaintiff's counsel (twice) overlooked the fact that the municipality, being a government entity, is unlike the commercial entities sued in this case. *C.f.,* P.R. Laws Ann. tit. 21, § 4003 ("Each municipality has legal capacity, which is independent and separate from the Government of the Commonwealth of Puerto Rico").

In plaintiff's opposition to summary judgment, the plaintiff argues that the Mayor in his personal capacity is liable because 47 U.S.C. § 553(a) applies to persons, not just to businesses. The Court agrees with plaintiff inasmuch that an individual in his personal capacity may be found liable under 47 U.S.C. § 553. To make such a finding, however, there must be some factual allegation that an individual acting in his personal capacity violated the statute. There is no such allegation in this case. Plaintiff has not raised any genuine issue of fact to challenge defendants' submission that the only act by Mayor Ortiz was to sign the contract with Fartronics on behalf of Sabana Grande. In signing this contract Mayor Ortiz acted in his official capacity. (Docket No. 45, Exh. A ("I, Miguel G. Ortiz—Mayor who represent the Municipality of Sabana Grande")). Accordingly, the claims against Mayor Ortiz in his personal capacity and the conjugal partnership formed by the Mayor and his wife, are **dismissed.**

IV. *Conclusion*

For the reasons stated above, defendants motion for summary judgment is

**GRANTED IN PART** and **DENIED IN PART.** The claims against Mayor Ortiz and the conjugal partnership constituted by Mayor Ortiz and his wife are **dismissed with prejudice.** The claim against Sabana Grande is **not dismissed.**

IT IS SO ORDERED.